**Michael M. BAYLSON, James J. West and Charles D. Sheehy**

v.

**The DISCIPLINARY BOARD OF the SUPREME COURT OF PENNSYLVANIA.**

Civ. A. No. 89–5264.

United States District Court, E.D. Pennsylvania.

April 22, 1991.

Michael M. Baylson, U.S. Atty., David F. McComb, Asst. U.S. Atty., Philadelphia, for plaintiffs.

Richard A. Sprague, Thomas A. Sprague, Philadelphia, for defendant.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

The plaintiffs in this action are members of the Pennsylvania Bar and the United States Attorneys or Acting United States Attorneys for the three districts of Pennsylvania. They seek relief from a state disciplinary rule that impresses an ethical obligation on them, as prosecutors, to obtain judicial approval before subpoenaing any lawyer to give evidence about his or her client to a grand jury. The parties have filed cross-motions for summary judgment. For the reasons that follow, the Court will grant the plaintiffs' motion.

### I.

After the advent of the Racketeer Influenced and Corrupt Organizations Act, Pub.L. 98–473, 98 Stat. 1837 (codified as amended at 18 U.S.C. §§ 1961–68), and the Continuing Criminal Enterprise statute, Pub.L. 91–513, 84 Stat. 1265 (codified at 21 U.S.C. § 848), Justice Department officials concluded that attorneys often held non-privileged information pertinent to criminal investigations and thus discarded their previous reticence in subpoenaing them to appear before grand juries. See Stern & Hoffman, *Privileged Informers: The Attorney Subpoena Problem and a Proposal for Reform*, 136 U.Pa.L.Rev. 1783, 1786–

89 (1988). This revision in policy has inspired a vigorous national debate about the propriety and ramifications of compelling lawyers to testify before investigative bodies. *See, e.g.,* Pierce & Colamarino, *Defense Counsel as a Witness for the Prosecution: Curbing the Practice of Issuing Grand Jury Subpoenas to Counsel for Targets of Investigations,* 36 Hastings L.J. 821 (1985); Subin, *The Lawyer as Superego: Disclosure of Client Confidences to Prevent Harm,* 70 Iowa L.Rev. 1091, 1178–79 (1985); Note, *A Critical Appraisal of the Justice Department Guidelines for Grand Jury Subpoenas Issued to Defense Attorneys,* 1986 Duke L.J. 145; Note, *Grand Jury Subpoenas of a Target's Attorney: A Need for a Preliminary Showing,* 22 Ga.L.Rev. 747 (1986); *Lawyer Cited for Contempt Over Fee Data,* N.Y. Times, Apr. 18, 1991, at B1, col. 5; *Thornburgh Policy Leads to a Sharp Ethics Battle,* N.Y. Times, Mar. 1, 1991, at B4, col. 3; *New Rule Set on Lawyer Subpoenas,* Nat'l L.J., Nov. 4, 1985, at 3, 42. It also has motivated some state and federal courts to devise disciplinary rules that require prosecutors to secure judicial approval before subpoenaing attorneys. D.Mass.R. 5(d)(4)(B); Mass.S.J.C.R. 3:08 (PF 15); Tenn.Ct.R.DR 7–103; Va.S.Ct.R. 3A:12 (codified as DR 8–102(A)). This roster now includes the Supreme Court of Pennsylvania, which has enacted Rule 3.10 of the Rules of Professional Conduct. The Rule provides:

> A public prosecutor or other governmental lawyer shall not, without prior judicial approval, subpoena an attorney to appear before a grand jury or other tribunal investigating criminal activity in circumstances where the prosecutor or other governmental lawyer seeks to compel the attorney/witness to provide evidence concerning a person who is or has been represented by the attorney/witness. Adopted Nov. 7, 1988, effective Nov. 26, 1988.

### COMMENT

It is intended that the required "prior judicial approval" will normally be withheld unless, after a hearing conducted with due regard for the need for appropriate secrecy, the court finds (1) the information sought is not protected from disclosure by Rule 1.6 [concerning confidentiality of information], the attorney-client privilege or the work product doctrine; (2) the evidence sought is relevant to the proceeding; (3) compliance with the subpoena would not be unreasonable or oppressive; (4) the purpose of the subpoena is not primarily to harass the attorney/witness or his or her client; and (5) there is no other feasible alternative to obtain the information sought.

Although various statutes and the Federal Rules of Procedure constitute the primary means for regulating practice in the federal district courts, the judges of each district are authorized to promulgate and amend local rules of practice. 28 U.S.C. § 2071(a); Fed.R.Civ.P. 83; Fed.R.Crim.P. 57. Pursuant to this rulemaking power, all three federal district courts situated in Pennsylvania ostensibly revised their local rules to state in terms that Rule 3.10 had no application in their respective jurisdictions. Local Rule 22 of the United States District Court for the Western District of Pennsylvania provides that the "Rules of Professional Conduct adopted by this court are the Rules of Professional Conduct adopted by the Supreme Court of Pennsylvania, as amended from time to time by the state court, except as otherwise provided by specific rule of this court." W.D.Pa. R.P. 22(I)(B). On March 11, 1989, the Court issued an Order provisionally expunging Rule 3.10 from its Local Rules:

> Rule 3.10 of the Rules of Professional Conduct, adopted by the Supreme Court of Pennsylvania and effective November 26, 1988, shall be and hereby is deleted as a rule of this court.
>
> COMMENT: The Board of Judges concludes that Rule 3.10 of the Rules of Professional Conduct, adopted by the Supreme Court of Pennsylvania, imposes an unnecessary and unreasonable burden on the Department of Justice and this court. Federal law and existing practice provide defense counsel and their clients with standing to raise justiciable issues in ap-

propriate cases following the issuance of a grand jury subpoena. The Clerk of Court is directed to comply with Rule 73 of the Rules of Civil Procedure forthwith and the order shall take effect 60 days thereafter, unless otherwise ordered by the court.

On May 17, 1989, the judges of the Western District signed an Order formally integrating the exception into Local Rule 22. Similarly, the Middle District amended its Local Rule 304.2 to read: "The Rules of Professional Conduct adopted by this court are the Rules of Professional Conduct adopted by the Supreme Court of Pennsylvania, except Rule 3.10, as amended from time to time by that court, unless specifically excepted in this court's rules." Eastern District Local Rule of Civil Procedure 14, applicable to criminal proceedings pursuant to Local Rule of Criminal Procedure 2, provides that

> The Rules of Professional Conduct adopted by this Court are the Rules of Professional Conduct adopted by the Supreme Court of Pennsylvania, as amended from time to time by that state court, except as otherwise provided by specific Rule of this Court after consideration of comments by representatives of bar associations within the state, except that prior court approval as a condition to the issuance of a subpoena addressed to an attorney in any criminal proceeding, including a grand jury, shall not be required. The propriety of such a subpoena may be considered on a motion to quash.
>
> Amended May 23, 1990.

E.D.Pa.R.Civ.P. 14(IV)(B).

The plaintiffs instituted this action to prevent the defendant, the Disciplinary Board of the Supreme Court of Pennsylvania, from enforcing Rule 3.10 against them and other federal prosecutors who are members of the Pennsylvania Bar. Created in 1972, the Disciplinary Board is an eleven member body that serves under the direction of the Pennsylvania Supreme Court and is charged with administering the state's Rules of Professional Conduct. Pa.R.D.E. 102(a), 201, & 205(a). The Board may commence an investigation into alleged attorney misconduct either on its own motion or in response to a complaint filed by any person. Pa.R.D.E. 205(c)(1) & 208(a)(1). Generally speaking, formal disciplinary proceedings against an attorney are conducted before a Board-appointed hearing committee, Pa.R.D.E. 205(c)(3) & (5), which, after receiving evidence and entertaining argument, submits to the Board a recommended disposition of the matter. The Board, after review of the committee's report, prepares its own statement of findings and recommendations, which is forwarded to the Supreme Court. Pa.R.D.E. 205(c)(6) & 208(d)(2).

According to the plaintiffs' complaint, because the district courts' amendments deleting Rule 3.10 from the local rules are federal laws and therefore supreme, they cannot be sanctioned for failing to secure prior judicial approval of attorney subpoenas. The plaintiffs also argue, among other things, that Rule 3.10 conflicts with the Federal Rules, violates article II of the Constitution by infringing on their executive duties to investigate criminal wrongdoing and to enforce federal laws, and interferes with the judiciary's article III powers to supervise federal grand juries. Both parties initially moved for judgment on the pleadings. The defendant asserted various reasons in support of its motion, including comity, justiciability, and failure to join an indispensable party. The plaintiffs, on the other hand, thought that the district courts' exceptions to Rule 3.10 in the local rules entitled them to judgment. The Court denied both motions, primarily because there were conflicting factual allegations regarding the procedural validity of the district courts' revisions to their local rules. Resolution of that question, in the Court's view, dictates whether other issues of potentially constitutional dimension need be reached. In other words, even though some grounds raised by the plaintiffs could have been disposed of on the pleadings, notions of judicial restraint required that the Court consider the local rules dispute first because it comprised the narrowest possible nonconstitutional ground upon which a decision could rest. *See Harris v. McRae,*

448 U.S. 297, 306–07, 100 S.Ct. 2671, 2683, 65 L.Ed.2d 784 (1980); *Spector Motor Serv., Inc. v. McLaughlin*, 323 U.S. 101, 105, 65 S.Ct. 152, 154, 89 L.Ed. 101 (1944). Thus, the Court directed that discovery be had.

The parties now have filed cross-motions for summary judgment. The plaintiffs urge the Court to hold that valid Local Rules exempt them from Rule 3.10's operation and that Rule 3.10 is inconsistent with the Federal Rules of Criminal Procedure and the Constitution. The Disciplinary Board, having abandoned the threshold arguments it asserted earlier and agreeing the case is ripe for disposition, contends that the district courts' amendments deleting Rule 3.10 are unsound for lack of appropriate notice and comment. Because, as a result, Rule 3.10 has been incorporated into federal law by the local rules of disciplinary enforcement and because it does not conflict with any Federal Rule, statute, or constitutional provision, the defendant concludes, the plaintiffs are not at liberty to disregard the obligations that Rule 3.10 imposes.

## II.

■ Individual federal courts have possessed, from their inception, rulemaking authority in some form. *See* Act of March 2, 1793, Ch. 22, § 7, 1 Stat. 33; Note, *Rule 83 and the Local Federal Rules*, 67 Colum. L.Rev. 1251, 1253–54 (1967). As indicated earlier, 28 U.S.C. § 2071, Fed.R.Civ.P. 83, and Fed.R.Crim.P. 57 currently permit each district court to make and amend local rules of practice. *Rodgers v. United States Steel Corp.*, 508 F.2d 152, 163 (3d Cir.), *cert. denied*, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975). These enabling provisions restrict the district court's power to do so, however, in important respects. The court may establish or revise local rules only after providing appropriate public notice and an opportunity to comment. 28 U.S.C. § 2071(b); *Tiedel v. Northwestern Michigan College*, 865 F.2d 88, 91 (6th Cir.1988). This limitation, which was imposed by a 1985 amendment to the Federal Rules and by the Judicial Improvements and Access to Justice Act of 1988, Pub.L. 100–702, 102 Stat. 4642 (codified in relevant part at 28 U.S.C. §§ 2071–77), is designed to ensure that local rules, like administrative regulations, are subject to public scrutiny and are formulated with the advice of those whom the rules affect. H.R.Rep. No. 422, 99th Cong., 1st Sess. 14–15, 18, 29 (1985); Fed.R.Civ.P. 83 advisory comm. note; Fed.R.Crim.P. 57 advisory comm. note; Siegel, *Changes in Federal Jurisdiction and Practice Under the New Judicial Improvements and Access to Justice Act*, 123 F.R.D. 399, 409–10 (1989). Local rules that are not drafted pursuant to the notice and comment procedure are invalid. *See* 28 U.S.C. § 2071(b); Fed.R.Civ.P. 83 ("A local rule *so adopted* shall take effect …" (emphasis added)); Fed.R.Crim.P. 57; 7 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 83.02, at 83–6 (1990) ("Assuming that the public notice and opportunity to comment provisions have been satisfied, the rule or amendment will become effective on the date specified by the district court."); *see also* Weinstein, *Reform of Federal Court Rulemaking Procedures*, 76 Colum. L.Rev. 905, 953 (1976). If there is "an immediate need," a court may dispense with notice and comment before implementing a rule, provided that it gives notice and an opportunity to comment "promptly thereafter." 28 U.S.C. § 2071(e). In addition, the Judicial Improvements Act, which places more rigorous controls on court rulemaking than do the Federal Rules of Procedure, mandates that in promulgating local rules each district court "shall" utilize an advisory committee, which should include members of the bar and which must make recommendations to the court. 28 U.S.C. § 2077(b); H.R.Rep. No. 422, 99th Cong., 1st Sess. 28 (1985) ("All lower Federal courts are required to use advisory committees as well as notice and comment."); Siegel, *Practice Commentary, reprinted in* 28 U.S.C.A. foll. § 2077 (1990 Supp.).

■ Neither the Federal Rules nor section 2071 fix the precise manner in which public notice must be disseminated and opportunity for comment afforded. The Advisory Committee's note on Fed.R.Civ.P. 83 states, "The amended Rule does not detail the procedure for giving notice and an op-

portunity to be heard since conditions vary from district to district. Thus, there is no explicit requirement for a public hearing, although a district may consider that procedure appropriate in all or some rulemaking situations." A district court similarly enjoys "considerable latitude" in calibrating its public notice method to the individual needs of its jurisdiction. 7 J. Moore & J. Lucas, *supra*, ¶ 83.02, at 83–5. "For example, the court may choose to publish the proposed rule or amendment in the advance sheets, mail notice to members of its bar or submit copies to bar and other professional organizations." *Id.* ¶ 83.02, at 83–6. A court also, rather than incur the expense of publication, may issue press releases describing proposed rule changes and inviting comment. Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, Memorandum to United States District Court Judges, Jan. 30, 1989, at 2.

Although the pertinent statutes, Federal Rules, and legislative history explain that the notice and comment requirement is a flexible one, those sources do not define what information the notice itself must convey. Some guidance may be found in the Administrative Procedure Act. 5 U.S.C. § 551 *et seq.* To be deemed adequate under the APA, an agency's notice of rulemaking must advise the public of the terms or substance of the proposed rule or describe the subjects or issues implicated by the contemplated action. 5 U.S.C. § 553(b); S.Rep. No. 248, 79th Cong., 2d Sess. 200 (1946) ("Agency notice must be sufficient to fairly appraise interested parties of the issues involved, so that they may present responsive data or argument relating thereto."); *United States v. Florida E. Coast R. Co.*, 410 U.S. 224, 243–44, 93 S.Ct. 810, 820, 35 L.Ed.2d 223 (1973); *Associated Builders and Contractors, Inc. v. Brock*, 862 F.2d 63, 67 (3d Cir.1988); *Simmons v. I.C.C.*, 757 F.2d 296, 300 (D.C.Cir.1985); *American Iron & Steel Inst. v. EPA*, 568 F.2d 284, 293 (3d Cir.1977). The notice also must specify the time, place, and nature of the comment procedure to be employed. 5 U.S.C. § 553(b); 1 K. Davis, *Administrative Law Treatise* § 6:25, at 571–72 (2d ed.

1978). The underlying purpose of the Judicial Improvements Act and the amendments to Fed.R.Crim.P. 57 and Fed.R. Civ.P. 83 justifies importing these easily met requisites into the district court rulemaking context. After all, those provisions are intended to ensure that the legal profession and interested members of the public have an opportunity to be heard. H.R. Rep. No. 422, 99th Cong., 1st Sess. 14–15, 18, 29 (1985); Fed.R.Civ.P. 83 advisory comm. note; Fed.R.Crim.P. 57 advisory comm. note; Siegel, *supra*, 123 F.R.D. 399, 409–10 (1989); Weinstein, *supra*, 76 Colum. L.Rev. at 963–64. That end obviously would be frustrated if a court's notice of rulemaking failed to disclose the subject matter of the anticipated local rule or the manner in which comments could be presented.

█ The plaintiffs contend at the outset that this Court cannot pass on the procedural validity of the local rules at issue. Instead, they maintain, the Judicial Improvements Act and the Federal Rules vest exclusive authority to do so in the Judicial Council of the Circuit. The plaintiffs are mistaken. Because Congress was discontent with the proliferation of local rules that conflicted "with the letter and the spirit" of rules of national applicability, H.R.Rep. No. 422, 99th Cong., 1st Sess. 15, 27–28 (1985); *see also* H.R.Rep. No. 889, 100th Cong., 1st Sess. 27, *reprinted in* 1988 U.S.Code Cong. & Admin.News 5982, 5988, the Judicial Improvements Act requires the Judicial Council of each Circuit to review periodically the local rules implemented by the district courts within its purview for consistency with the Federal Rules. 28 U.S.C. § 332(d)(4). Not only did Congress empower the Council to "modify or abrogate" any local rule found inconsistent with national practice or procedure, 28 U.S.C. § 332(d)(4), it significantly altered the nature of its review. "This test for inconsistency should *not*, however, be whether the deviation made by the local rule from the general rule is 'outcome determinative[.'] [R]ather, the test should be whether the local rule can co-exist with the general rule without negating the purpose

of the general rule." H.R.Rep. No. 422, 99th Cong., 1st Sess. 27 (1985) (quoting *Colgrove v. Battin,* 413 U.S. 149, 164 n. 23, 93 S.Ct. 2448, 2456 n. 23, 37 L.Ed.2d 522 (1973)).

Courts regularly have entertained challenges to local rules on a variety of grounds, *see, e.g., Frazier v. Heebe,* 482 U.S. 641, 107 S.Ct. 2607, 96 L.Ed.2d 557 (1987); *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981); *Frangos v. Doering Equip. Corp.,* 860 F.2d 70 (3d Cir.1988); *Bailey v. Systems Innovation, Inc.,* 852 F.2d 93 (3d Cir.1988); *Hawes v. Club Ecuestre El Comandante,* 535 F.2d 140 (1st Cir.1976); *Brewster v. North Am. Van Lines, Inc.,* 461 F.2d 649 (7th Cir.1972), including that procedural requisites were not satisfied. *Miner v. Atlass,* 363 U.S. 641, 650, 80 S.Ct. 1300, 1306, 4 L.Ed.2d 1462 (1960); *Horner Equip. Int'l v. Seascape Pool Center, Inc.,* 884 F.2d 89, 94 & n. 18 (3d Cir.1989); *United States v. Klubock,* 832 F.2d 664, 666 (1st Cir.1987) (in banc) (notice and comment); *id.* at 671–75 (Breyer, J., dissenting) (same); *United States v. Columbia Broadcasting Sys., Inc.,* 497 F.2d 102, 103 n. 3 (5th Cir.1974); *see Smith v. Oelenschlager,* 845 F.2d 1182, 1183–84 (3d Cir.1988). Nothing in the language of the Federal Rules or section 332 evinces a newly devised intent to divest the judiciary of that long-standing authority, and no case has ever intimated to the contrary. As the legislative history explicitly reveals, the Judicial Councils and the courts share the power of review. "Of course, local rules may be found improper by a court in a court proceeding." H.R. Rep. No. 422, 99th Cong., 1st Sess. 28 (1985). Further, section 2073, which establishes the method for promulgating Rules of Procedure and Evidence under section 2072, states that procedural deficiencies do not render such Rules invalid. 28 U.S.C. § 2073(e) ("Failure to comply with this section does not invalidate a rule prescribed under section 2072 of this title."). Its purpose is "to avoid litigation about the propriety of a rule when the only alleged invalidity is non-compliance with one of the proce-

dural requirements" stated in section 2073. H.R.Rep. No. 422, 99th Cong., 1st Sess. 26 (1985). The absence of a parallel provision regarding district court rulemaking under section 2071 is additional proof that Congress did not immunize local rules from judicial examination for procedural regularity.

■ Turning to the substance of the defendant's attack on the amendments to the three local disciplinary rules, the Court agrees that the district courts did not follow appropriate notice and comment rulemaking procedures. The uncontroverted facts disclose that on February 6, 1989, the judges of the Eastern District voted unanimously[1] to remove Rule 3.10 from Local Rule 14. Subsequently, on March 14, 1989, the judges formally determined that prior notice and comment could be dispensed with because there was an immediate need for the exception. 28 U.S.C. § 2071(e). On May 23, 1990, the Chief Judge of the Eastern District signed an Order amending Rule 14 to state in terms that court approval as a precondition to the issuance of a subpoena was not required. The Clerk of the Court then sent copies of revised Rule 14 to all attorneys registered on the local rules mailing list. No notice soliciting comment accompanied the distribution, and no such notice was circulated afterward. Although the record submitted by the parties is far from clear on the point, at least one judge of the Eastern District discussed the amendment to Local Rule 14 with attorneys at a Bench Bar conference.

On January 20, 1989, the judges of the Middle District voted to extirpate Rule 3.10 from its Local Rule 304.2. The decision was without dissent. In early March, the Clerk of Court issued a press release, which read:

The Judges of this court recently approved a modification of Local Rule 304.2. That rule applies the Rules of Professional Conduct adopted by the Supreme Court of Pennsylvania to all attorneys admitted to practice before the Middle District. The modification excepts Rule 3.10 of the Rules of Professional Conduct

[1]. In the Eastern District, senior judges do not vote on proposed local rules or amendments.

adopted by the Supreme Court of Pennsylvania from being applied in this court. The press release was dispatched to various legal publications in the District. No other notice was disseminated, and no comments were ever lodged with the Court.

On March 21, 1989, the judges of the Western District approved, also unanimously, an Order declaring that Rule 3.10 "shall be and hereby is deleted as rule of this court." *See supra* at 331–332. The Order itself stated that it was not to take effect until sixty days later. The mandate then was published in the *Pittsburgh Law Journal.* On April 24, 1989, the Clerk of Court advised the Chief Judge of the Western District that "[t]he time for public comment on the proposed amendment of Local Rule 22(B) has passed, and no comments have been received. I have, therefore, prepared the attached Order for your consideration and approval." At a meeting held on May 17, 1989, the judges of the Court formally acted to expunge the state bar provision from Local Rule 22.

The putative revisions share two defects. First, the district courts did not utilize advisory committees at any stage in promulgating the amendments. Second, the notices distributed by the districts did not solicit comment or explain where, how, or when interested individuals could be heard regarding the deletion of Rule 3.10 from the local rules. With the exception of the Western District's Order of March 21, the notices also give every impression that the Courts were simply announcing their final decisions, rather than inviting input. That no individuals (apart from the United States Attorneys) and only one organization in the entire Commonwealth submitted comment about the amendments confirms this conclusion. Nor does the Court find persuasive the plaintiffs' argument that discussion of the attorney subpoena controversy at a Bench Bar conference satisfied the Eastern District's statutory obligation to afford notice and an opportunity to comment. Undoubtedly, a properly announced, open meeting between judges and interested individuals to debate the merits of a particular rule would discharge section 2071(a)'s notice and comment requirement.

In this case, however, there is no evidence that the agenda of the Bench Bar conference was adequately noticed, or that the public or even all interested lawyers in the District were invited to attend the discussion. Accordingly, the three amendments are invalid.

### III.

### A.

■ As explained previously, Eastern District Civil Rule 14, Middle District Rule 304, and Western District Rule 22 adopt the Rules of Professional Conduct enacted by the Supreme Court of Pennsylvania as the ethical standards that attorneys must obey when practicing in the district courts. The defendant argues that once the defective exceptions to Rule 3.10 are excised, the local rules incorporate all of Pennsylvania's Rules of Professional Conduct, including 3.10. The Disciplinary Board is correct in its assertion that when an amendment to an existing local rule has not been perfected, the original rule remains in force. *United States v. Diaz–Villafane,* 874 F.2d 43, 45 (1st Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989). The defendant also is right to say that insofar as the district courts have adopted it, Rule 3.10 is a federal law. *See United States v. Klubock,* 832 F.2d 649, 651 (1st Cir.1986), *reinstated in relevant part by equally divided court,* 832 F.2d 664, 668 (1st Cir. 1987) (in banc).

■ The Court concludes, however, that the pertinent local rules themselves implicitly reject the absorption of Rule 3.10 and that Rule 3.10 is not compatible with the Federal Rules of Criminal Procedure or well-settled grand jury practice. These issues are interrelated. Local rules that are in conflict with the Federal Rules or Acts of Congress are nullities. 28 U.S.C. § 2071; Fed.R.Crim.P. 57; *Frazier,* 482 U.S. at 646, 107 S.Ct. at 2611; *Lasky v. Continental Products Corp.,* 804 F.2d 250, 255 (3d Cir.1986); *United States v. Statchuk,* 682 F.2d 466, 467 (4th Cir.1982). If the Court were to interpret the three local rules in question as requiring judicial scru-

tiny of grand jury subpoenas directed to attorneys before they are served, it would have to declare that portion of them to be inconsistent with the Rules of Criminal Procedure. Because statutes or rules should be construed in a manner that renders them compatible with one another, implying exceptions to Rule 3.10 in the local rules is warranted. *United States v. Lopez–Cavasos*, 915 F.2d 474, 479 (9th Cir. 1990). In any event, whether the local rules displace Rule 3.10 by implication or the Federal Rules forbid integration of Rule 3.10 into the local rules, the result is the same. Preservice judicial review of grand jury subpoenas addressed to attorneys is neither available nor permitted in the federal district courts of Pennsylvania. There are several reasons for this.

 First, the local disciplinary rules are designed to regulate "the conduct of attorneys" who practice before the district courts. E.D.Pa.Civ.R. 14; W.D.Pa.R. 22; *see* M.D.Pa.R. 304.1. "Acts or omissions by an attorney admitted to practice before this Court, individually or in concert with any other person or persons, which violate the Rules of Professional Conduct adopted by this Court shall constitute misconduct and shall be grounds for discipline." E.D. R.Civ.P. 14(IV)(B). *Accord* M.D.Pa.R.P. 304.2; W.D.Pa.R.P. 22(I)(B). Plainly, the language, purpose, and structure of these local disciplinary rules do not contemplate the modification of practice outside the context of defining professional standards for lawyers appearing before the district courts or establishing methods by which to adjudicate claimed breaches of those norms. "[T]he Code [of Professional Responsibility] does not delineate rules of evidence, but only sets forth strictures on attorney conduct." *Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equip. Corp.*, 546 F.2d 530, 539 (3d Cir.1976), *cert. denied*, 430 U.S. 984, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977). Although Rule 3.10 does perhaps implicate "latent" ethical concerns, *United States v. Klubock*, 832 F.2d at 653, it also is a rule of criminal procedure that imposes a concomitant restraint on the actions of courts and federal grand juries. As the Rule and its

comment attest, Rule 3.10 is only nominally addressed to the conduct of government attorneys. It requires as a predicate the erection of novel court procedures and interjects an additional layer of judicial supervision over the grand jury subpoena process. It commands the court to evaluate five factors to ascertain whether service of an attorney subpoena is proper. Stated another way, Rule 3.10 initially creates a rule of criminal procedure that contains evidentiary standards for judicial review and then impresses an ethical duty upon prosecutors to adhere to that procedure. *See* Sheridan, *Grand Jury Subpoenas to Criminal Defense Attorneys: Massachusetts Restrains the Federal Prosecutor Through an "Ethical" Rule*, 2 Geo. J. Legal Ethics 485, 519 (1988). As a matter of principle and taxonomy, that antecedent component of Rule 3.10 bears no relation to the interests which animated the adoption of the local rules of disciplinary enforcement.

Second, the Court takes into account the district courts' failed attempts to expunge Rule 3.10 from their local rules. Although infirm, those provisions are instructive about how the judges viewed the operation of their own procedures that were in effect before the amendments were drafted. *Cf. Diaz–Villafane*, 874 F.2d at 46. The Western District's Order of March 11, 1989 deemed Rule 3.10 both "unreasonable" and "unnecessary" in light of existing federal law and practice that permit attorneys to challenge subpoenas after their issuance and service. Likewise, the Eastern District's amendment to R.Civ.P. 14(IV)(B) reaffirmed the propriety of moving to quash illegitimate subpoenas. This language suggests that the judges of those Courts considered Rule 3.10 to be redundant with their procedures at best and inconsistent with them at worst. *See* Dep. of M. Kunz, Nov. 6, 1990, at 30–31 (Def. Mem., Dec. 17, 1990, Ex. A); Dep. of Hon. D. Ziegler, Nov. 13, 1990, at 17–18, 25 (Def.Mem., Dec. 17, 1990, Ex. E); *see also In re Grand Jury Subpoena Served Upon Doe*, 781 F.2d 238, 250 n. 7 (2d Cir.) (in banc), *cert. denied*, 475 U.S. 1108, 106 S.Ct. 1515, 89 L.Ed.2d 914

(1986). It further betrays the fair amount of irony embedded in the Disciplinary Board's position. The defendant contends, correctly enough, that the exemptions are invalid for lack of appropriate notice and opportunity to comment. Yet it goes on to argue that as a consequence the district courts have adopted the more imposing and far-reaching alteration of practice represented by Rule 3.10, even though that too was done without notice or comment in the district courts and even though those amendments simply endeavored to state expressly what is implicit in the local rules and in the Federal Rules of Criminal Procedure.

Third, engrafting Rule 3.10 onto the three district courts' local disciplinary rules would place them in conflict with Federal Rule of Criminal Procedure 6(e), as supplemented by local rules calculated to protect the secrecy of grand jury proceedings. E.D.Pa.R.Crim.P. 4 & 12; M.D.Pa.R. 117 & 120; W.D.Pa.R. 32. Rule 6(e) generally prohibits disclosure of "matters occurring before the grand jury." *See In re Grand Jury Investigation (DiLoreto)*, 903 F.2d 180, 181–82 (3d Cir.1990); *In re Grand Jury Matter (Catania)*, 682 F.2d 61, 63–64 (3d Cir.1982); *In re Grand Jury Investigation (Appeal of New Jersey State Comm'n of Investigation)*, 630 F.2d 996, 1000 (3d Cir.1980), *cert. denied sub nom. Rittenhouse Consulting Enter. Ltd. v. New Jersey State Comm'n of Investigation*, 449 U.S. 1081, 101 S.Ct. 865, 66 L.Ed.2d 805 (1981). This policy of secrecy, which is "older than our Nation itself," *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399, 79 S.Ct. 1237, 1241, 3 L.Ed.2d 1323 (1959), and which is integral to maintaining "the proper functioning of our grand jury system," *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218, 99 S.Ct. 1667, 1672, 60 L.Ed.2d 156 (1979), is not to be abridged lightly. "In the absence of a clear indication in a statute or Rule, we must always be reluctant to conclude that a breach of [grand jury] secrecy has been authorized." *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 425, 103 S.Ct. 3133, 3138, 77 L.Ed.2d 743 (1983). *Accord Illinois v. Abbott & Associates,*

*Inc.*, 460 U.S. 557, 572, 103 S.Ct. 1356, 1364, 75 L.Ed.2d 281 (1983) ("Congress, of course, has the power to modify the rule of secrecy by changing the showing of need required for particular categories of litigants. But the rule is so important, and so deeply-rooted in our traditions, that we will not infer that Congress has exercised such a power without affirmatively expressing its intent to do so."); *Pittsburgh Nat'l Bank v. United States*, 771 F.2d 73, 77 (3d Cir.1985). Preserving the confidentiality of grand jury proceedings furthers several ends. It prevents the flight of those who might be indicted, allows "the utmost freedom to the grand jury in its deliberations," guards against witness and jury tampering, facilitates "free and untrammeled disclosures by person who have information with respect to the commission of crimes," *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681–82 n. 6, 78 S.Ct. 983, 986 n. 6, 2 L.Ed.2d 1077 (1958) (quoting *United States v. Rose*, 215 F.2d 617, 628–29 (3d Cir.1954)), and ensures that "persons who are accused but exonerated by the grand jury" are not stigmatized for having been the focus of a criminal investigation or otherwise subjected to public ridicule. *Douglas Oil Co.*, 441 U.S. at 219, 99 S.Ct. at 1673.

In *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), the Supreme Court held that a trial subpoena duces tecum issued under Federal Rule of Criminal Procedure 17(c) is not "unreasonable or oppressive" if the party seeking to avoid quashal establishes three elements: relevancy, admissibility, and specificity. *Id.* at 699–700, 94 S.Ct. at 3103. Stated more fully, the party resisting the motion to quash or modify the trial subpoena must demonstrate that the documents sought are "evidentiary" and "relevant," that they are "not otherwise procurable reasonably in advance of trial by exercise of due diligence," that the party "cannot properly prepare for trial" without prior production of the documents, and that "the application is made in good faith and is not intended as a general 'fishing expedition.'" *Id.* The requisites to judicial approval of grand jury

subpoenas enunciated in Rule 3.10 substantially overlap with, and indeed are more exacting than those developed in *Nixon.* The commentary to Rule 3.10 indicates that a court ordinarily should not authorize the service of a grand jury subpoena directed to an attorney unless it finds that the information sought is "relevant to the proceeding," that there is "no other feasible alternative" avenue by which to obtain the information, that compliance with the subpoena would not be "unreasonable or oppressive," that the purpose of the subpoena is "not primarily to harass" the attorney or his or her client, and that the evidence is not protected by Professional Conduct Rule 1.6, privilege, or the work product doctrine.

The Supreme Court specifically has forbidden application of the *Nixon* test to grand jury subpoenas, however, because it impairs the "strict secrecy" in which Rule 6(e) cloaks grand jury proceedings. *United States v. R. Enterprises, Inc.,* —— U.S. ——, ——, 111 S.Ct. 722, 726–27, 112 L.Ed.2d 795 (1991). "Requiring the Government to explain in too much detail the particular reasons underlying a subpoena threatens to compromise 'the indispensable secrecy of grand jury proceedings.' Broad disclosure also affords the targets of investigation far more information about the grand jury's internal workings than the Rules of Criminal Procedure appear to contemplate." *Id.* at ——, 111 S.Ct. at 727 (quoting *United States v. Johnson,* 319 U.S. 503, 513, 63 S.Ct. 1233, 1238, 87 L.Ed. 1546 (1943)). *Accord In re Grand Jury Subpoena Served Upon Doe,* 781 F.2d at 248 (compelling Government to make preliminary showing that it has need for evidence sought by subpoena and that attorney is only source of that evidence "would seriously jeopardize the secrecy" of grand jury proceedings); *Matter of Sinadinos,* 760 F.2d 167, 170 (7th Cir.1985). Rule 3.10

suffers from this infirmity even more acutely. It does not merely force the Government to disgorge the same type of information that the Supreme Court has deemed to endanger the integrity of the grand jury process. It further requires the disclosure of additional matters and mandates that this be done in every instance in which a subpoena commands an attorney to give evidence about a client and before the subpoena may even be served.[2]

Because Rule 3.10 does not provide explicitly whether judicial review necessitates an ex parte or an adversary hearing, one answer to the foregoing objection might be that it requires only the former, which perhaps would diminish the peril of unauthorized disclosure. That construction of the Rule gives rise to other difficulties. "The value of a judicial proceeding ... is substantially diluted where the process is *ex parte* because the court does not have available the fundamental instrument for judicial judgment: an adversary proceeding in which both parties may participate." *Carroll v. Princess Anne,* 393 U.S. 175, 183, 89 S.Ct. 347, 352–53, 21 L.Ed.2d 325 (1968). *Accord Nixon,* 418 U.S. at 709, 94 S.Ct. at 3108 ("The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts."). Thus, unless decisionmaking transpires in an adversarial (although presumably in camera) setting, the procedure established under Rule 3.10 would not be able to supply courts with an adequate record upon which to render a meaningful decree or achieve its goal of extending "[a]ny non-illusory, actual protection" to attorneys and their clients. Sheridan, *supra,* 2 Geo. J. Legal Ethics at 498; *see* Stern & Hoffman, *supra,* 136 U.Pa.L.Rev. at 1824.

---

**2.** The defendant contended at oral argument that whether Rule 3.10 constitutes an impermissible burden on the federal grand jury is a question of fact precluding the entry of summary judgment in favor of the plaintiffs. That is not so. The issue here—as in *R. Enterprises, In re Grand Jury Matter (Backiel),* 906 F.2d 78 (3d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 509, 112 L.Ed.2d 521 (1990), and the other cases

discussed in the text—is whether the pre-service judicial screening mechanism and the particular legal standards used to test the propriety of grand jury subpoenas are consistent with the Federal Rules of Procedure, privilege law, and the historic function of the grand jury. As the caselaw amply demonstrates, the bulk of Rule 3.10 is at odds with all three.

Moreover, to authorize service of an attorney subpoena under Rule 3.10, the court must conclude that the information sought is not shielded from disclosure by Rule 1.6, privilege, or the work product doctrine. In many cases, only the attorney who is the subject of the subpoena or her client will be in custody of the facts needed to make those determinations. *See United States v. Bump*, 605 F.2d 548, 551 (10th Cir.1979); *United States v. Alvarez*, 519 F.2d 1036, 1047 (3d Cir.1975); Weiner, *Federal Grand Jury Subpoenas to Attorneys: A Proposal for Reform*, 23 Am.Crim.L.Rev. 95, 107 (1985). Excluding the subpoenaed lawyer from the hearing also effectively would shift to the Government the burden of proving to the court's satisfaction the elaborate negative that the materials or information sought are not covered by the attorney-client privilege. *See Alvarez*, 519 F.2d at 1047; *United States v. Bump*, 605 F.2d at 551; *In re Grand Jury Investigation (Sun Co.)*, 599 F.2d 1224, 1233–35 (3d Cir. 1979). That, of course, may not be done. *See R. Enterprises*, —— U.S. at ——, 111 S.Ct. at 728; *Matter of Walsh*, 623 F.2d 489, 493 (7th Cir.), *cert. denied*, 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980); *United States v. (Under Seal)*, 748 F.2d 871, 876 (4th Cir.1984); *In re Grand Jury Empanelled February 14, 1978 (Markowitz)*, 603 F.2d 469 (3d Cir.1979).

In any event, whether applications for approval of attorney subpoenas are submitted ex parte or are subject to adversarial testing, Rule 3.10 is nevertheless incompatible with the historic powers and function of the grand jury in two respects. First, the Supreme Court's additional reason for declaring that the *Nixon* standard cannot be imported into the grand jury context equally forbids Rule 3.10's incorporation into federal procedure. "The multifactor test announced in *Nixon* would invite procedural delays and detours while courts evaluate the relevancy and admissibility of documents sought by a particular subpoena. We have expressly stated that

grand jury proceedings should be free of such delays." *R. Enterprise, Inc.*, —— U.S. at ——, 111 S.Ct. at 726–27. Because the effectiveness of the criminal justice system often "hinges on swift action," H.R.Rep. No. 1064, 96th Cong., 2d Sess. 12 (1980), disruption of the grand jury process is far from an idle concern. When the grand jury is "investigating crimes such as highly mobile drug trafficking or ongoing crimes which endanger the health and safety of the public," the imposition of delay "may be intolerable." *Id.* By commanding a more searching inquiry than *Nixon* does and ordaining that review be undertaken without motion, Rule 3.10 would engender interruptions of substantially greater duration and frequency than those condemned by the Court. Indeed, because Rule 3.10 does not and cannot displace the procedure to quash subpoenas duces tecum established by Fed.R.Crim.P. 17, subpoenas may be twice reviewed by courts before the grand jury is allowed to consider the evidence it seeks.[3]

Second, by interposing impermissible substantive restraints on the grand jury's ability to gather evidence, Rule 3.10 subverts the authority and autonomy of the grand jury system. As the Supreme Court has explained:

Traditionally, the grand jury has been accorded wide latitude to inquire into violations of criminal law. No judge presides to monitor its proceedings. It deliberates in secret and may determine alone the course of its inquiry. The grand jury may compel the production of evidence or the testimony of witnesses as it considers appropriate, and its operation generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials. "It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any par-

---

**3.** A court's prior determination that a grand jury subpoena meets the standards of Rule 3.10 would preclude relitigation of the controversy during a later Rule 17(c) motion only if the

attorney to whom the subpoena is addressed was permitted to take part in the first set of proceedings. Allowing the attorney to do so, however, would violate Rule 6(e).

ticular individual will be found properly subject to an accusation of crime." *United States v. Calandra*, 414 U.S. 338, 349–50, 94 S.Ct. 613, 620–21, 38 L.Ed.2d 561 (1974) (quoting *Blair v. United States*, 250 U.S. 273, 282, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1919)). *Accord Sells Eng'g, Inc.*, 463 U.S. at 423, 103 S.Ct. at 3137 (stating that the grand jury "has always been extended extraordinary powers of investigation and great responsibility for directing its own efforts."); *United States v. Mandujano*, 425 U.S. 564, 571, 96 S.Ct. 1768, 1774, 48 L.Ed.2d 212 (1976); *Pittsburgh Plate Glass Co.*, 360 U.S. at 399–400, 79 S.Ct. at 1241; *In re Grand Jury Matter (Appeal of District Council 33)*, 770 F.2d 36, 40 (3d Cir.) (referring to the "tremendous breadth of the grand jury's investigatory powers."), *cert. denied*, 474 U.S. 1022, 106 S.Ct. 574, 88 L.Ed.2d 558 (1985). Of course, Rule 3.10 does not purport to visit any burdens squarely on the grand jury. Yet, by hampering the prosecutor who serves as its primary agent and advisor, the Rule does so by indirection. "The prosecutor ordinarily brings matters to the attention of the grand jury and gathers the evidence required for the jury's consideration. Although the grand jury may itself decide to investigate a matter or to seek certain evidence, it depends largely on" the United States Attorney's office "to secure the evidence or witnesses it requires," *Sells Eng'g, Inc.*, 463 U.S. at 430, 103 S.Ct. at 3141, and to "draw up and supervise the execution of subpoenas." *Id.* at 430 n. 13, 103 S.Ct. at 3141 n. 13; *see United States v. Martino*, 825 F.2d 754, 761 (3d Cir.1987); *Doe v. DiGenova*, 779 F.2d 74, 80 (D.C.Cir.1985); *In re Grand Jury Proceedings (Schofield I)*, 486 F.2d 85, 90 (3d Cir.1973). Depriving the grand jury of this vital assistance doubtless would render it "much less effective" in performing its essential tasks, *Sells Eng'g, Inc.*, 463 U.S. at 430, 103 S.Ct. at 3141, for "[w]ithout thorough and effective investigation, the grand jury would be unable either to ferret out crimes deserving of prosecution, or to screen out charges not warranting prosecution." *Id.* at 424, 103 S.Ct. at 3138.

The Third Circuit has expressed strong disapproval of virtually every aspect of Rule 3.10. In *In re Grand Jury Proceedings (Schofield I)*, 486 F.2d 85 (3d Cir. 1973), a prospective witness had refused to comply with a grand jury subpoena. The United States filed an application to enforce the subpoena under 28 U.S.C. § 1826(a), which constituted its only means to exact compliance. The Court held that when a district court is moved to issue coercive process under that section, it should require the Government to make a minimum showing by affidavit that the information demanded is relevant to an investigation properly within the grand jury's jurisdiction and is not sought primarily for another purpose. *Id.* at 93. *Accord In re Grand Jury Proceedings (Schofield II)*, 507 F.2d 963, 966 (3d Cir.), *cert. denied*, 421 U.S. 1015, 95 S.Ct. 2424, 44 L.Ed.2d 685 (1975). The Third Circuit has made clear, however, that *Schofield I* "did not deal with procedural safeguards surrounding the issuance of grand jury subpoenas," *United States v. Oliva*, 611 F.2d 23, 25 (3d Cir.1979), and did "not purport to encompass the appropriateness of an *appearance* before the grand jury." *In re Grand Jury Proceedings (Appeal of McNabb)*, 658 F.2d 211, 213 (3d Cir.1981) (emphasis in original). Rather, because *Schofield I* addressed "the procedure appropriate to enforcement proceedings," it is the Government's initiation of an action under section 1826(a) or the filing of a motion to quash under Rule 17, "not the issuance of the subpoena" itself, that comprises "the triggering event for the affidavit requirement." *Oliva*, 611 F.2d at 25. *Accord McNabb*, 658 F.2d at 215 & n. 3; *Appeal of Hughes*, 633 F.2d 282, 287 (3d Cir.1980). Further, the *Schofield* regime, unlike Rule 3.10, does "not intend to impede the grand jury process by requiring hearings in every case," *Schofield II*, 507 F.2d at 966, and it plainly does not impose the same magnitude of encumbrances on the grand jury or the Government as Rule 3.10 does. *See Backiel*, 906 F.2d at 87–88; *McNabb*, 658 F.2d at 214–15.

■ Thus, in *McNabb*, the Third Circuit rejected a contemnor's assertion that he

could not be compelled to appear and testify before a grand jury until the Government had made an initial *Schofield*-type showing of reasonableness, relevance, and propriety. After stating that a putative witness cannot invoke the protections of *Schofield* before he or she has even shown up to testify, 658 F.2d at 213, the Court labelled McNabb's suggested series of requirements "dysfunctional" because their imposition threatened to "invert" the entire investigatory process by forcing the grand jury "to furnish answers to its questions before it could ask them." *Id.* at 214. The panel concluded that "[i]nasmuch as grand juries are subject to judicial control and subpoenas can be challenged by motions to quash, any further requirement that would saddle a grand jury with preliminary showings to procure attendance would unnecessarily impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws." *Id.* at 214–15. Rule 3.10, however, does precisely that which *McNabb* forbids. It mandates that before a grand jury subpoena may be served on an attorney, the district court must find, among other things, that the attorney's expected testimony or evidence is relevant to the grand jury's investigation and is not sought primarily for an improper purpose.

In *In re Grand Jury Matter (Backiel)*, 906 F.2d 78 (3d Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 509, 112 L.Ed.2d 521 (1990), the Third Circuit held that compelling the Government to show that the subpoenaed attorney is the only practical source of the information demanded by the grand jury— which Rule 3.10 explicitly imposes as a precondition to approval of service—and that there is a heightened need for the evidence—which is Rule 3.10's overall effect—would "obviously impair the efficiency of grand juries. Such a requirement would bring investigators to intermittent standstills as the government set out to prove the necessity of each piece of information it sought to obtain." *Id.* at 88 (quoting *In re Grand Jury Proceedings*, 862 F.2d 430, 431–32 (2d Cir.1988)). The panel also noted that potential witnesses or sources of evidence would be less inclined to cooperate if they knew that either the information they impart or their identities might be disclosed by the Government in its effort to satisfy these additional requisites. *Id.; see Hughes*, 633 F.2d at 287. In explaining its disapprobation of the "no feasible alternative" criterion the Court stated, "The grand jury cannot be constrained to acquire only the minimum evidence necessary to secure an indictment and is free to pursue cumulative leads.... How much information is 'enough' is a matter for the judgment of the grand jurors and the prosecution rather than the court." *Backiel*, 906 F.2d at 88. *Accord In re Grand Jury Investigation (Tinari)*, 631 F.2d 17, 19–20 (3d Cir.1980), *cert. denied*, 449 U.S. 1083, 101 S.Ct. 869, 66 L.Ed.2d 808 (1981); *In re Grand Jury Empanelled May 7, 1987*, Misc. No. 87–165, 1989 WL 72260, slip op. (D.N.J. June 28, 1989); *cf. United States v. Dionisio*, 410 U.S. 1, 15, 93 S.Ct. 764, 772, 35 L.Ed.2d 67 (1973) ("No grand jury witness is 'entitled to set limits to the investigation that the grand jury may conduct.' "). The reasons for this are not hard to divine. The judiciary is poorly equipped to anticipate with any precision what a subpoenaed attorney will say before he or she testifies, the relative importance of the evidence sought for the grand jury's consideration, or whether that information can be secured from a source other than the attorney, *Sinadinos*, 760 F.2d at 170, particularly if the reviewing court must labor to do so without the benefit of a factual record developed in an adversary setting. A concerted effort by the courts to inquire into these matters would cause substantial delays in the progress of criminal investigations. *Id.; Weiner, supra*, 23 Am.Crim.L.Rev. at 121. And, as one court has observed, the grand jury is not required to guess at its peril the exact moment when it has acquired a sufficient quantum of evidence to indict and therefore cease its investigation. *Sinadinos*, 760 F.2d at 170–71.

Every other Court of Appeals but one has declined to permit, as inconsistent with the mission of the grand jury or otherwise contrary to federal law, the application of

conditions on subpoenas similar those imposed by Rule 3.10. For example, in *In re Grand Jury Subpoena Served Upon Doe,* 781 F.2d 238 (2d Cir.) (in banc), *cert. denied,* 475 U.S. 1108, 106 S.Ct. 1515, 89 L.Ed.2d 914 (1986), which the Third Circuit quoted with approval in *Backiel,* 906 F.2d at 87–88, the Second Circuit held that creating the "additional requirements that the government show its need for the information sought and that the attorney is the only source of that information" before a court may validate an attorney subpoena "would hamper severely the investigative function of the grand jury, if not stop the grand jury 'dead in its tracks.'" 781 F.2d at 248. Supreme Court precedent, the Court of Appeals stated, has admonished against compelling the Government to tender "a preliminary showing of need, and unavailability of other sources" precisely because it risks an "unacceptable interruption" of the grand jury process. *Id.* at 248–49 (citing *Dionisio,* 410 U.S. at 17 n. 16, 93 S.Ct. at 773 n. 16). *Accord In re Grand Jury Matter,* 926 F.2d 348, 350 (4th Cir.1991); *In re Grand Jury Subpoena for Attorney Representing Reyes–Requena,* 913 F.2d 1118, 1127, 1129 (5th Cir.1990); *In re Grand Jury Subpoenas (Anderson),* 906 F.2d 1485, 195–96 (10th Cir.1990); *In re Grand Jury Proceedings,* 862 F.2d at 431–32; *United States v. Perry,* 857 F.2d 1346, 1347–49 (9th Cir.1988); *In re Grand Jury Proceedings,* 791 F.2d 663, 665–66 (8th Cir.1986); *Matter of Klein,* 776 F.2d 628, 632–36 (7th Cir.1985); *Sinadinos,* 760 F.2d at 170–71; *In re Grand Jury Proceedings (Weiner),* 754 F.2d 154, 156 (6th Cir.1985); *United States v. Morchower,* 718 F.2d 1093 (4th Cir.1983) (unpublished opinion summarized in *Doe,* 781 F.2d at 247 n. 4); *In re Grand Jury Proceedings (Freeman),* 708 F.2d 1571, 1575 (11th Cir. 1983); *Walsh,* 623 F.2d at 492–93. The only opinion to the contrary in this respect, the equally divided in banc decision of the First Circuit in *Klubock,* is an orphan in the federal system, and it will not find a relative here.

Further, Rule 3.10 dramatically expands the scope of privilege protections for attorneys and their clients in defiance of the canon that the grand jury's right to evidence is substantively limited only by express constitutional, common law, or statutory privileges. *Branzburg v. Hayes,* 408 U.S. 665, 688, 707–08, 92 S.Ct. 2646, 2660, 2669–70, 33 L.Ed.2d 626 (1972); *United States v. Bryan,* 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1950); *Matter of Grand Jury Impaneled Jan. 21, 1975,* 541 F.2d 373, 379, 382 (3d Cir.1976). As Federal Rule of Evidence 501 directs, "[T]he privilege of a witness ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience." The purpose of the attorney-client privilege, "the oldest of the privileges for confidential communications known to the common law," *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981), is "to encourage clients to make full disclosure to their attorneys" so that they can render accurate legal counsel. *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976). Under the standard definition of the privilege, when legal advice of any kind is sought from a professional legal advisor in her capacity as such, the communications relating to that purpose made in confidence by the client are at his instance permanently protected from disclosure by himself or counsel, unless the protection has been waived. *United States v. Rockwell Int'l,* 897 F.2d 1255, 1264 (3d Cir.1990).

In *Matter of Walsh,* 623 F.2d 489 (7th Cir.), *cert. denied,* 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980), the Seventh Circuit considered a district court ruling that had placed on the Government requirements virtually indistinguishable from those articulated in Rule 3.10. The district court had held that before an attorney could be compelled to appear before a grand jury, the Government must demonstrate that the information demanded by the subpoena is not insulated from disclosure by attorney-client privilege or the work product doctrine, that there is a particularized need for the testimony or documents sought, that no other source for

the evidence is available, and that the information is material. *Id.* at 492. In reversing, the Court of Appeals declared this matrix of restrictions, which the district court had made "available to no other [class of] grand jury witness," constituted an impermissible constriction of the grand jury's authority and an undue expansion of the attorney-client privilege. *Id.* at 493. The Court wrote:

> No privilege, no matter how central to our system of justice, has been held to excuse the "obligation of every person to appear and give his evidence before the grand jury." Instead, the interest in preserving confidences and the interest in pursuing the public's right to "every man's evidence" are accommodated. To that end, the witness must take the stand and answer or refuse to answer individual questions.... [W]ere we to afford attorneys the right to refuse to appear before grand juries, we would be granting a protection far greater than the parameters of the [attorney-client] privilege.

*Id.* (quoting *United States v. Dionisio,* 410 U.S. at 9–10, 93 S.Ct. at 769). *Accord Reyes–Requena,* 913 F.2d at 1129 ("[J]udicial attempts to regulate attorney appearances before the grand jury would tend to create exemptions beyond matters of privilege and constitutional limitations and would transgress the command of *Branzburg.*"); *Klubock,* 832 F.2d at 669–70 (Levin, J., dissenting); *see Backiel,* 906 F.2d at 87–88; *Grand Jury Subpoena Served Upon Doe,* 781 F.2d at 249.

The *Walsh* Court's reasoning is in line with the overwhelming weight of authority that a witness who is subpoenaed to produce documents or testify cannot simply decline to do so altogether on the basis of privilege, but rather must assert the privilege document by document or in response to specific questions. *Rockwell Int'l,* 897 F.2d at 1265; *Matter of Certain Complaints Under Investigation,* 783 F.2d 1488, 1518 (11th Cir.) (citing multiple cases), *cert. denied sub nom. Hastings v. Godbold,* 477 U.S. 904, 106 S.Ct. 3273, 91 L.Ed.2d 563 (1986); *Klein,* 776 F.2d at 634–35; *United States v. First State Bank,* 691 F.2d 332, 335 (7th Cir.1982). "Otherwise, a court would be forced to attempt to determine the existence, application, and scope of an asserted privilege in ignorance of the context in which it is alleged to apply." *Certain Complaints Under Investigation,* 783 F.2d at 1518. *Walsh*'s rejection of the district court's detailed guidelines for attorney subpoenas also is consistent with the precept that because the attorney-client privilege and the work product doctrine obstruct the search for truth and generate benefits that are, "at best, indirect and speculative," they must be "strictly confined within the narrowest possible limits consistent with the logic of [their] principle[s]." *In re Grand Jury Investigation (Sun Co.),* 599 F.2d at 1235. *Accord In re Grand Jury Proceedings (FMC Corp.),* 604 F.2d 798, 802–03 (3d Cir.1979); *In re Grand Jury Investigation,* 557 F.Supp. 1053, 1055 (E.D.Pa.1983).

Of more immediate concern, if the district courts have adopted Rule 3.10, then they have conferred on attorneys not only a protection that exceeds the bounds of recognized privileges, but also one that constitutes an almost impregnable immunity from ever testifying or producing documentary evidence regarding their clients. Rule 3.10 dictates that before a court may allow the service of a grand jury subpoena addressed to an attorney, it must find that the information sought "is not protected from disclosure by Rule 1.6" of Pennsylvania's Rules of Professional Conduct. Rule 1.6 is a confidentiality provision and states that "[a] lawyer shall not reveal information relating to representation of a client unless the client consents after consultation." There are exceptions to this broad ethical obligation. For instance, it does not extend to disclosures impliedly authorized in order to represent the client, or those necessary to prevent certain criminal or fraudulent acts or to comply with Rule 3.3, which requires that lawyers act with candor toward tribunals. Pa.Rules of Professional Conduct Rule 1.6(a)-(c)(2).

Although the duty to keep client information confidential and the attorney-client privilege stem from similar policy consider-

ations, the former is substantially broader than the latter. *See, e.g.,* S. Gillers & N. Dorsen, Regulation of Lawyers 287–88 (1985); G. Hazard & S. Koniak, The Law and Ethics of Lawyering, ch. 4 (1990); Subin, *supra,* 70 Iowa L.Rev. at 1112–13, 1145; Zacharias, *Rethinking Confidentiality,* 74 Iowa L.Rev. 351, 355 n. 18, 363 n. 55 (1989); *cf. Universal Athletic Sales Co.,* 546 F.2d at 539. In particular, while the attorney-client privilege extends only to confidences learned from the client, *Rockwell Int'l,* 897 F.2d at 1264; *In re Grand Jury Proceedings,* 791 F.2d at 665; 8 J. Wigmore, Evidence § 2317, at 618–19 (J. McNaughton rev. 1961), the ethical prohibition against disclosure generally applies no matter what the source of information about the client. The commentary to Rule 1.6 underscores this: "The confidentiality rule applies not merely to matters communicated in confidence by the client but also to *all information relating to the representation, whatever its source.* A lawyer may not disclose such information except as authorized or required by the Rules of Professional Conduct or other law." (Emphasis added). Of course, the responsibility to safeguard client secrets is an important, time-honored one and is not in itself objectionable. Rule 3.10, however, converts the confidentiality rule into a legal mandate, that is, a privilege, because it requires the court to withhold altogether approval of a subpoena directed to an attorney if the information sought "relate[s] to representation of [the attorney's] client," unless the client consents after consultation or unless one of four exceptions is applicable. Apart from simply prohibiting the issuance or service of subpoenas directed to attorneys under all circumstances, it would be difficult indeed to invent another linguistic formulation that so grossly distorts current notions of evidentiary privilege and is so profoundly inimical to the traditional configuration of grand jury authority.

Even if one could harmonize the "new and expanded" attorney-client privilege created by Rule 3.10, *see Klubock,* 832 F.2d at 669–70 (Levin, J., dissenting), with the scope of the grand jury's powers, it is a modification that most assuredly cannot be engineered by local rule. Reasonable minds may disagree about the exact contours of district court rulemaking authority, but there is no question that the lower federal courts cannot alter or enhance privileges in that manner. *See* Fed.R.Evid. 501; Fed.R.Crim.P. 57 advisory comm. note (district courts permitted to regulate "details" of practice); *Washington–Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co.,* 263 U.S. 629, 635, 44 S.Ct. 220, 222, 68 L.Ed. 480 (1924) ("[N]o rule of court can ... abrogate or modify the substantive law."); *In re Grand Jury Proceedings,* 558 F.Supp. 532 (W.D.Va. 1983) ("The grant of authority found in § 2071 allows courts to make 'rules of practice,' but not 'rules of law.' "); *cf. Burlington N.R. Co. v. Woods,* 480 U.S. 1, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987) (construing 28 U.S.C. § 2072). Even Federal Rules touching upon those matters are not valid without Congress's blessing. As 28 U.S.C. § 2074(b) clearly prescribes, "Any such rule creating, abolishing, or modifying an evidentiary privilege shall have no force or effect unless approved by Act of Congress." *See* H.R.Rep. No. 422, 99th Cong., 1st Sess. 22, 23 (1985) ("[S]ection 2074(b) provides that evidentiary privileges are *substantive* in nature and may not be altered except by Act of Congress." (emphasis added)); Siegel, *Practice Commentary, reprinted in* 28 U.S.C.A. foll. § 2074 (1990 Supp.).

 To be sure, the authority of the grand jury is not unlimited, and that body is expected to operate within the confines of the Constitution and federal law. *Butterworth v. Smith,* 494 U.S. 624, ——, 110 S.Ct. 1376, 1382, 108 L.Ed.2d 572 (1990); *Dionisio,* 410 U.S. at 11, 93 S.Ct. 764; *Branzburg,* 408 U.S. at 688, 707–08, 92 S.Ct. at 2660, 2669–70; *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920). But, as the caselaw unambiguously teaches, imposing Rule 3.10's specific requirements—that the information demanded by the grand jury subpoena must not be protected by Professional Conduct Rule 1.6, privilege, or the

work product doctrine, that the evidence must be relevant and sought for a permissible reason, and that the attorney must be the only source of the information—impairs far too harshly the Government's and the grand jury's vital interests in preserving secrecy, ensuring investigatory flexibility, and preventing procedural delays. Precedent further dictates the conclusion that Rule 3.10's pre-service judicial review mechanism itself, whether adversary or ex parte in character, at the least impermissibly trenches upon important interests in maintaining the grand jury's investigatory latitude and avoiding procedural interruptions.

■ Last, Rule 3.10 cannot be reconciled with Federal Rule of Criminal Procedure 17, which regulates subpoena practice. Subdivision (a) provides: "A subpoena shall be issued by the clerk under the seal of the court.... The clerk shall issue a subpoena, signed and sealed but otherwise in blank to a party requesting it, who shall fill in the blanks before it is served." In contrast stand subdivisions (b), (c), (f), and (g). There, the drafters explicitly delineated the court's role in the subpoena process. Subdivision (c) empowers a court to "quash or modify" a subpoena duces tecum "if compliance would be unreasonable or oppressive." The court may entertain an application to quash or modify, however, only after the subpoena has been served and only "on motion." Under subdivision (g), the court may hold in contempt any individual who, "without adequate excuse," fails to obey a served subpoena. Judicial approval as a precondition to the issuance or service of a subpoena is set forth in only two instances. Subdivision (b) states that if a defendant makes a showing of financial distress and need for a specific witness, "[t]he court shall order at any time" that, without cost to the defendant, "a subpoena be issued for service on [the] named witness." Subdivision (f), in conjunction with Fed.R.Crim.P. 15, requires the entry of a court order before the clerk of court can issue a subpoena directing the attendance of a witness at a deposition.

A previous incarnation of Fed.R.Civ.P. 45, the civil analogue to Fed.R.Crim.P. 17, contained a screening requirement similar to the one erected by Rule 3.10. Prior to 1946, subdivision (d)(1) necessitated judicial approval for the issuance of subpoenas commanding the production of documentary evidence at depositions. *See* Report of Proposed Amendments to Rules of Civil Procedure for the District Courts of the United States, *reprinted in* 1946 U.S.Code Cong. & Admin.News 2313, 2349. That provision was stricken, however, as needlessly burdensome and duplicative of other safeguards. As the Advisory Committee stated at the time, the precondition of court approval

> is unnecessary and oppressive on both counsel and court, and it has been criticized by district judges. There is no satisfactory reason for a differentiation between a subpoena for the production of documentary evidence by a witness at a trial (Rule 45(a)) and for the production of the same evidence at the taking of a deposition. Under this amendment, the person subpoenaed may obtain the protection afforded by any of the orders permitted under Rule 30(b) or Rule 45(b).

*Id. Accord* Report of the Advisory Committee on Federal Rules of Civil Procedure Recommending Amendments, *reprinted in* 1946 U.S.Code Cong. & Admin.News 2387, 2397.

Rule 17(a), of course, makes no allowance for judicial involvement in the issuance and service of subpoenas. Courts have acknowledged this on many occasions, *see United States v. Miller*, 425 U.S. 435, 446 n. 8 96 S.Ct. 1619, 1625 n. 8, 48 L.Ed.2d 71 (1976) (comparing subpoenas with search warrants by noting that, unlike the latter, subpoenas are not subject to prior judicial approval); *United States v. Nelson*, 852 F.2d 706, 710 (3d Cir.) (noting that under Fed.R.Crim.P. 17(a) "subpoenas are issued without meaningful judicial oversight"), *cert. denied*, 488 U.S. 909, 109 S.Ct. 262, 102 L.Ed.2d 250 (1988); *Martino*, 825 F.2d at 761 ("[A]lthough grand jury subpoenas are issued in the name of the district court over the signature of the clerk, 'they are issued pro forma and in

blank to anyone requesting them.' ... It is evident that no judge issue[s] the grand jury subpoena since there is no place for a judge's signature." (quoting *Schofield I*, 486 F.2d at 90)); *id.* at 761 n. 4 ("[T]he court's actual involvement with the issuance of a grand jury subpoena is limited to issuing a blank subpoena bearing the seal of the court."); *DiGenova*, 779 F.2d at 80 ("While a federal grand jury subpoena is issued under the authority of a court, the court has no substantive involvement in a particular subpoena *unless* the subpoenaed party challenges it." (emphasis added)); *In re Grand Jury Matters*, 751 F.2d 13, 16 (1st Cir.1984); *Schofield I*, 486 F.2d at 90 (stating the "court exercises no prior control whatsoever" upon the use of subpoenas), and, in fact, part of the rationale supporting the *Schofield* affidavit requirement is the judiciary's utter lack of control over the grand jury subpoena process until an action to enforce or motion to quash is filed. *Schofield I*, 486 F.2d at 90, 92. That pre-service judicial screening is expressly authorized in subdivisions (b) and (f) of Rule 17 further suggests that it is not permissible as a general proposition. These principles, in conjunction with the drafter's rejection of pre-issuance judicial approval under Rule 45 and the great latitude afforded grand jury investigations, militate toward the conclusion that silence regarding court intervention cannot be construed as an invitation to assign judges new functions in the grand jury subpoena process. *Cf. Miner v. Atlass*, 363 U.S. at 651–52, 80 S.Ct. at 1306–07; Sheridan, *supra*, 2 Geo. J. Legal Ethics at 508–09. Indeed, one reason undergirding the revision of Rule 45 is equally applicable to Rule 17. Individuals to whom subpoenas duces tecum are directed may seek judicial relief by way of a motion to quash.

The Disciplinary Board posits that because some courts, even though Rule 17 does not give authority them to, have considered motions to quash subpoenas ad testificandum, Rule 17 cannot be read to harbor prohibitions against the expansion of juridical authority in this area. *See United States v. Klubock*, 639 F.Supp. 117, 123 (D.Mass.1986), *aff'd by equally divided court*, 832 F.2d 664, 668 (1st Cir.1987) (in banc). This contention is flawed. First, the view that subpoenas ordering an individual to testify may be quashed is contrary to the weight of opinion, and, for reasons previously discussed, is not the superior practice. *See supra* at 341–42, 344; 2 C. Wright, *Federal Practice and Procedure: Criminal 2d* § 273, at 149 & n. 13 (1982 & 1990 Supp.). Second, Rule 17(c) allows courts to quash improper subpoenas duces tecum, but Rule 17(a) unquestionably does not provide for pre-service judicial screening. There is surely a difference between enlarging the ambit of a power already explicitly conferred and creating a new power altogether out of a source that does not even arguably bestow it. Last, the Disciplinary Board's assertion, if sound, simply broadens its dilemma. Because Rule 3.10 cannot nullify the procedure to quash subpoenas under Fed.R.Crim.P. 17, then all subpoenas, not just subpoenas duces tecum, may be twice reviewed by courts before the grand jury is allowed to secure the evidence it seeks. As a result, the investigative process would be subject to even more prevalent delays and disruptions. *See supra* 340 & n. 3.

In any event, Rule 3.10 runs afoul with Rule 17 in another manner considered neither by the *Klubock* court nor the defendant. A presumption of regularity attaches to grand jury subpoenas "issued through normal channels." *R. Enterprises*, ─── U.S. at ───, 111 S.Ct. at 728. That presumption, which is expressed in the language of Rule 17, "generally may be dispelled only upon particularized proof of irregularities in the grand jury process." *Id.* (quoting *United States v. Mechanik*, 475 U.S. 66, 75, 106 S.Ct. 938, 944, 89 L.Ed.2d 50 (1986) (O'Connor, J., concurring in judgment)). *Accord Appeal of District Council 33*, 770 F.2d at 40 ("Grand jury proceedings are entitled to 'a presumption of regularity.' Thus, the party objecting to the enforcement of a grand jury subpoena has the burden of demonstrating some irregularity in those proceedings." (citations omitted)); *Schofield I*, 486 F.2d at 92. In its language and tenor, Rule 3.10 presup-

poses the opposite. The Rule forbids the service of a grand jury subpoena upon an attorney "unless" the court grants its approval, which in turn must "normally be withheld unless" the court, after a hearing, is able to find affirmatively that certain conditions have been satisfied. No "particularized proof of irregularities" is needed to occasion scrutiny of the subpoena. Instead, review is triggered by the bare fact that a prosecutor desires to serve a grand jury subpoena on a lawyer to secure evidence about that attorney's client. Inquiry into the propriety of the subpoena is required in every instance in which that combination of circumstances arises, without any action by the lawyer to whom the subpoena is addressed. This provision of automatic review conflicts with the plain terms of Rule 17, which allows a person to avoid compliance with a grand jury subpoena *"only* 'on motion' " and only if he or she demonstrates that compliance would be unreasonable within the meaning of Rule 17(c). *R. Enterprises,* —— U.S. at ——, 111 S.Ct. at 728 (emphasis added). That the individual commanded to produce evidence is a lawyer does not alter the Rule's operation. *In re Grand Jury Matter,* 926 F.2d at 350 ("Attorneys, like all others, have 'the initial task of demonstrating ... some valid objection to compliance.' " (quoting *R. Enterprises,* —— U.S. at ——, 111 S.Ct. at 730 (Stevens, J., concurring))).

### B.

■ Because the district courts implicitly have rejected the importation of Rule 3.10 into their local rules and because Rule 3.10 offends federal law, a state entity such as the Disciplinary Board cannot initiate disciplinary proceedings against federal prosecutors who fail to obtain prior judicial authorization for grand jury subpoenas when they are practicing in those courts. *See Sperry v. Florida,* 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963); *Silverman v. State Bar of Texas,* 405 F.2d 410, 413–415 (5th Cir.1968), *on remand,* 303 F.Supp. 486 (W.D.Tex.1969); *County of Suffolk v. Long Island Lighting Co.,* 710 F.Supp. 1407, 1414–15 (E.D.N.Y.1989). It cannot be doubted that states have a con-stitutionally permissible and legitimate interest in regulating attorneys admitted to their bars and in overseeing the practice of law within their borders. *In re Griffiths,* 413 U.S. 717, 723, 93 S.Ct. 2851, 2855, 37 L.Ed.2d 910 (1973); *Sperry,* 373 U.S. at 383, 83 S.Ct. at 1325; *Lowrie v. Goldenhersh,* 716 F.2d 401, 408 (7th Cir.1983). Nevertheless, under the supremacy clause of the Constitution, state laws, including disciplinary rules, "though enacted in the exercise of powers not controverted," must yield when found incompatible with federal law. *Sperry,* 373 U.S. at 384, 83 S.Ct. at 1325. *Accord Supreme Court of Virginia v. Friedman,* 487 U.S. 59, 108 S.Ct. 2260, 101 L.Ed.2d 56 (1988); *Zauderer v. Office of Disciplinary Counsel,* 471 U.S. 626, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985); *NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). Local rules, no less than Federal Rules or Acts of Congress, are part of the supreme law of the land. *See United States v. Hvass,* 355 U.S. 570, 78 S.Ct. 501, 2 L.Ed.2d 496 (1958); *Weil v. Neary,* 278 U.S. 160, 49 S.Ct. 144, 73 L.Ed. 243 (1929); *Klubock,* 832 F.2d at 651.

There is a conflict between federal and state law when compliance with the regulations of both sovereigns is a "physical impossibility" or when the state enactment is "an obstacle to the accomplishment and execution of the full purposes and objectives" of federal legislation. *Hillsborough County v. Automated Medical Labs.,* 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985). *Accord Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). Government attorneys operating in the district courts of Pennsylvania obviously cannot request and obtain federal judicial approval for grand jury subpoenas in conformity with Rule 3.10 and simultaneously refrain from doing so in order to comply with federal dictates. State enforcement of Rule 3.10 against attorneys for their conduct in the district courts also would countermand national objectives by requiring them to act in manner which, as explained earlier at length, would frustrate the expeditious and just administration of the federal criminal laws.

## IV.

The Court is not oblivious to the concerns that supplied the impetus to Rule 3.10's creation. The wisdom of the Rule, however, is not at issue here. The state is of course free to fashion its own procedures so long as it does not transgress applicable constitutional values. But interposing the strictures of Rule 3.10 into the federal sphere is another matter entirely. The Rule cannot be fairly understood to have been integrated into the local rules of the district courts. It distorts evidentiary privileges, disrupts existing subpoena practice, and compromises the authority and function of the. modern grand jury. In consequence, Rule 3.10 is without vitality in the district courts of Pennsylvania, and the state may not sanction prosecutors who fail to adhere to it when they are working in those fora.

An order and declaration follow.

## ORDER

AND NOW, this 22d day of April, 1991, for the reasons set forth in this Court's Memorandum dated April 22, 1991;

IT IS ORDERED that Defendant's Motion for Summary Judgment is DENIED;

AND IT IS FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment is GRANTED and that, pursuant to Federal Rule of Civil Procedure 56, judgment is ENTERED in favor of Plaintiffs and against Defendant;

AND IT IS DECLARED that the United States District Courts for the Western, Middle, and Eastern Districts of Pennsylvania have not adopted Pennsylvania Rule of Professional Conduct 3.10 and that Rule 3.10 is in conflict with federal law;

AND IT IS FURTHER DECLARED that, in accordance with the supremacy clause of the United States Constitution, Defendant Disciplinary Board of the Supreme Court of Pennsylvania, its officers, agents, servants, employees, and attorneys therefore shall not initiate disciplinary proceedings against or sanction any prosecutor or other government attorney on the ground that the prosecutor or other government attorney, when practicing before the United States District Court for the Western, Middle, or Eastern District of Pennsylvania, had subpoenaed an attorney, without prior judicial approval, to appear before a grand jury or other tribunal investigating criminal activity in circumstances where the prosecutor or other governmental lawyer sought to compel the attorney/witness to provide evidence concerning a person who is or has been represented by the attorney/witness.