975 F.2d 102
 61 USLW 2165
 Michael M. BAYLSON, James J. West, Thomas W. Corbett, Jr.
v.
The DISCIPLINARY BOARD OF the SUPREME COURT OF PENNSYLVANIA,
Byrd R. Brown; James F. Mundy; Murray S. Eckell; Richard
D. Cilardi, Jr.; Judith Heh; John R. Padova; John A.
Tumolo; Daniel R. Gilbert; William L. Keller; George F.
Douglas, Jr.; Berle L. Schiller; Charles V. Stoelker, Jr.;
Frederick Wells Hill
The Disciplinary Board of the Supreme Court of Pennsylvania,
Appellant.
 No. 91-1425.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 21, 1991.
Decided Sept. 16, 1992.
As Amended Sept. 21, 1992.
 
 Michael M. Baylson (argued), U.S. Atty., Philadelphia, Pa., for appellees Baylson and West.
 Richard A. Sprague (argued), Sprague & Sprague, Philadelphia, Pa., for appellant.
 John J. Kerrigan, Jr. (argued), Newtown, Pa., for amicus PA Trial Lawyers Ass'n.
 Michael A. Bloom (argued), Philadelphia, Pa., for amicus PA Bar Ass'n.
 Before: MANSMANN, COWEN and HIGGINBOTHAM, Circuit Judges.
 OPINION OF THE COURT
 A. LEON HIGGINBOTHAM, Jr., Circuit Judge.
 
 
 1
 The issue on this appeal is whether Rule 3.10 of the Pennsylvania Rules of Professional Conduct, which was adopted by the federal district courts in Pennsylvania, may be enforced against federal prosecutors practicing before the federal district courts in that state. The rule requires a federal prosecutor to obtain prior judicial approval before serving a grand jury subpoena on an attorney where the attorney would be asked to testify about past or present clients. We hold that Rule 3.10 may not be enforced against federal prosecutors because its adoption as federal law falls outside the rule-making authority of the district courts, and its enforcement as state law violates the Supremacy Clause of the United States Constitution.
 
 
 2
 * On November 7, 1988, the Supreme Court of Pennsylvania adopted Rule 3.10 of the Pennsylvania Rules of Professional Conduct governing lawyers who practice in Pennsylvania. Rule 3.10 provides in its entirety:
 
 
 3
 A public prosecutor or other governmental lawyer shall not, without prior judicial approval, subpoena an attorney to appear before a grand jury or other tribunal investigating criminal activity in circumstances where the prosecutor or other governmental lawyer seeks to compel the attorney/witness to provide evidence concerning a person who is or has been represented by the attorney witness. Adopted Nov. 7, 1988, effective Nov. 26, 1988.
 
 COMMENT
 
 4
 It is intended that the required "prior judicial approval" will normally be withheld unless, after a hearing conducted with due regard for the need for appropriate secrecy, the court finds (1) the information sought is not protected from disclosure by Rule 1.6 [concerning confidentiality of information], the attorney-client privilege or the work product doctrine; (2) the evidence sought is relevant to the proceeding; (3) compliance with the subpoena would not be unreasonable or oppressive; (4) the purpose of the subpoena is not primarily to harass the attorney/witness or his or her client; and (5) there is no other feasible alternative to obtain the information sought.
 
 
 5
 Before the addition of Rule 3.10, each of the three federal district courts in Pennsylvania had adopted by local rules the Rules of Professional Conduct of the Pennsylvania Supreme Court, as amended from time to time by the state supreme court, as the standards of professional conduct for attorneys admitted to the bars of those federal courts.
 
 
 6
 After Rule 3.10 was enacted, all three federal district courts in Pennsylvania purported to revise their local rules to state that Rule 3.10 had no application in their respective jurisdictions. All three districts excepted Rule 3.10 from their local rules without using an advisory committee and without giving the public prior notice and opportunity to comment as required by 28 U.S.C. § 2071.
 
 
 7
 On July 19, 1989, after the federal district courts had excepted Rule 3.10 from their local rules, plaintiffs, Michael Baylson, James West and Thomas Corbett, Jr., (hereafter collectively referred to as Baylson) members of the Pennsylvania bar and Acting United States Attorneys for the three federal districts in Pennsylvania, sued defendant, the Disciplinary Board of the Supreme Court of Pennsylvania (Board), in the federal District Court for the Eastern District of Pennsylvania, to prevent defendant from enforcing Rule 3.10 against them and other federal prosecutors who are members of the Pennsylvania Bar.
 
 
 8
 Specifically, plaintiffs complained that Rule 3.10 violated Article II of the United States Constitution by infringing on their executive prosecutorial duties. Plaintiffs also claimed that Rule 3.10 conflicted with Federal Rule of Criminal Procedure 6(e) by improperly interfering with the grand jury process. Finally, plaintiffs argued that, because the district courts' amendments deleting Rule 3.10 from the Local Rules were supreme federal laws, application of Rule 3.10 to federal prosecutors would violate the Supremacy Clause of the Constitution.
 
 
 9
 Both Baylson and the Board moved for summary judgment. On April 22, 1991, the district court granted Baylson's motion for summary judgment. First, the court held that the amendments by the federal district courts deleting Rule 3.10 from their local rules were invalid because the district courts had not used advisory committees, nor had they notified and sought comment from the public, as they are required to do by the Judicial Improvement Act, 28 U.S.C. § 2071(b). The court then agreed with the Board that, since the amendments to the local rules were invalid, Rule 3.10 remained in force. The court also agreed with the Board that insofar as the district courts had adopted it, Rule 3.10 was federal law. Nonetheless, the court concluded that Rule 3.10 could not be enforced against federal prosecutors in the Eastern, Middle and Western Districts of Pennsylvania because the rule violated the Supremacy Clause of the United States Constitution.
 
 
 10
 The Board now appeals. Baylson has not appealed the district court's holding that the amendments by the three federal district courts, excepting Rule 3.10 from their local rules, were invalid.
 
 II
 
 11
 In its order granting summary judgment in favor of Baylson, the district court held that "the United States District Courts for the Western, Middle and Eastern Districts of Pennsylvania have not adopted Pennsylvania Rule of Professional Conduct 3.10 and that Rule 3.10 is in conflict with federal law." Baylson v. Disciplinary Board of Supreme Court of Pennsylvania, 764 F.Supp. 328, 349 (E.D.Pa.1991).
 
 
 12
 As far as we can tell, the district court based its holding on four different grounds.
 
 
 13
 As to the first ground, the district court reasoned that the local disciplinary rules themselves implicitly reject the absorption of Rule 3.10 because the local rules are not meant to establish mechanisms of judicial review, rules of procedure or evidentiary standards. Rule 3.10, according to the district court, does exactly that. It "initially creates a rule of criminal procedure that contains evidentiary standards for judicial review and then impresses an ethical duty upon prosecutors to adhere to that procedure." Baylson, 764 F.Supp. at 337. In short, the district court read Rule 3.10 as a procedural and evidentiary rule masquerading as a rule of conduct.
 
 
 14
 As to the second ground, the court determined that Rule 3.10 conflicts with two specific provisions of the Federal Rules of Criminal Procedure: Rule 6(e) and Rule 17. Rule 6(e) generally prohibits the disclosure of matters occurring in front of the grand jury. According to the district court, Rule 3.10 violates this policy of secrecy because it would force the government to disclose secret grand jury information in every instance in which a subpoena commands an attorney to give evidence about a client.
 
 
 15
 Rule 17 regulates subpoena practice. Specifically, Fed.R.Crim.P. 17 provides in relevant part that the clerk of the court, without judicial supervision, shall issue a subpoena to a party requesting it. Thus, according to the district court, Rule 3.10 conflicts with Fed.R.Crim.P. 17 because Rule 3.10 requires prior judicial approval of an attorney subpoena, whereas Fed.R.Crim.P. 17 makes no allowance for judicial intervention in the issuance or service of a subpoena to an attorney. Id. at 346.
 
 
 16
 As to the third ground, the district court found Rule 3.10 to conflict with the historic powers and functions of the grand jury for two reasons: First, the review procedure required by Rule 3.10 would invite delays and detours thereby interfering with the speed of the grand jury investigations. Id. at 340. Second, Rule 3.10 would subvert the autonomy of the grand jury by interposing substantive restraints on the grand jury's ability to gather evidence. Id.
 
 
 17
 As to the fourth ground, the district court determined that Rule 3.10 impermissibly broadens the scope of the attorney-client privilege at the expense of the grand jury, again for two reasons. First, according to the district court, the attorney-client privilege only protects information learned directly from the client and does not prevent an attorney from testifying about information learned from sources other than the client. On the other hand, Rule 3.10 seems to go beyond the attorney-client privilege and permits an attorney to refuse to divulge all confidential client information, whether learned from the client or from any other source. Id. at 345. Second, the district court reasoned that a witness who is called to testify before the grand jury cannot decline to do so altogether on the basis of a privilege, but rather must assert the privilege document by document, or question by question. Rule 3.10, on the other hand, would permit an attorney to decline to appear before the grand jury without having to assert the privilege document by document and question by question. Id. at 344.
 
 
 18
 On appeal, the Disciplinary Board attempts to refute each one of the grounds of decision announced by the district court. However, at bottom, the argument of the Board in favor of Rule 3.10 comes down to this: allowing prosecutors to subpoena an attorney to testify about the attorney's client before a grand jury creates the real possibility of causing an irreconcilable conflict of interest between attorney and client, threatening the client's Sixth Amendment right to counsel. According to the Board, calling an attorney as a witness before a grand jury will probably force the attorney to withdraw before trial, thereby depriving the client of the attorney of his or her own choice.
 
 
 19
 The Board's Sixth Amendment right of counsel argument, while phrased in constitutional terms, is, at least on the facts of this case, an argument of public policy regarding the attorney-client relationship. Though the Board may be correct in arguing that attorney subpoenas raise Sixth Amendment right to counsel concerns, the fact remains that a person does not have a right to counsel prior to indictment by a grand jury. Kirby v. Illinois, 406 U.S. 682, 688, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411 (1972). Moreover, the Supreme Court has never held that the Sixth Amendment right to counsel includes the absolute right to counsel of one's own choice.
 
 
 20
 In short, we agree with the decision of the district court that Rule 3.10 may not be enforced against federal prosecutors in the three district courts of Pennsylvania. But we do not find it necessary to rest our decision on any of the broad grounds announced by the district court. Instead, we think it suffices to hold that Rule 3.10 is invalid because its adoption as federal law falls outside the local rule-making authority of the federal district courts, and its enforcement as state law violates the Supremacy Clause of the United States Constitution. The reasons for our decision follow.
 
 III
 
 21
 The Supreme Court, pursuant to 28 U.S.C. § 2072(a), is vested with the authority to prescribe rules of practice and procedure for the federal courts. The federal district and circuit courts may, however, pursuant to 28 U.S.C. § 2071(a), prescribe local rules of practice so long as these rules are consistent with the rules of practice and procedure promulgated by the Supreme Court under section 2072.
 
 
 22
 Federal Rule of Criminal Procedure 57, itself adopted by the Supreme Court pursuant to 28 U.S.C. § 2072(a), sets out the power of the district court to adopt local rules relating to criminal matters. Rule 57 provides in relevant part that each district court may from time to time make or amend the rules governing its practice except that these rules may not be inconsistent with the Federal Rules of Criminal Procedure. The Advisory Committee's comments on Rule 57 go on to explain the narrow scope and purpose of Rule 57. According to the committee's comments, the purpose of Rule 57 is to leave "matters of detail" to individual courts to regulate either by local rules or by usage. As to the scope of those "matters of detail" the committee cites as examples: "the mode of impanelling a jury, the manner and order of interposing challenges to jurors, the manner of selecting the foreman of a trial jury, the matter of sealed verdicts, the order of counsel's arguments to the jury and other similar details."
 
 
 23
 Accordingly, when the district court adopts a local rule which touches on criminal matters, that rule must comply with at least two requirements. First, pursuant to 28 U.S.C. § 2071(a) and F.R.Crim.P. 57, the local rules must not be inconsistent with the Federal Rules of Criminal Procedure. Second, as the advisory notes to Rule 57 made clear, the local rules must be narrow in scope and must deal with "matters of detail" not covered by the Federal Rules.[1] Local rules that fail to comply with those requirements are nullities. Frazier v. Heebe, 482 U.S. 641, 646, 107 S.Ct. 2607, 2611, 96 L.Ed.2d 557 (1987).
 
 
 24
 Among the rules which fall under the local rule-making authority of the district courts are rules regulating the conduct of attorneys practicing before them. Theard v. United States, 354 U.S. 278, 281-83, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957); Frazier v. Heebe, 482 U.S. 641, 645-46, 107 S.Ct. 2607, 2611, 96 L.Ed.2d 557 (1987). Rule 3.10 was adopted by the district courts for the Eastern, Middle and Western districts of Pennsylvania pursuant to such local rule-making authority. But in doing so, the district courts exceeded their local rule-making authority because Rule 3.10 cannot be said to be not inconsistent with Fed.R.Crim.P. 17 as required by 28 U.S.C. § 2071(a), and because Rule 3.10 goes beyond those "matters of detail" contemplated by Fed.R.Crim.P. 57.
 
 
 25
 * Federal Rule of Criminal Procedure 17 regulates subpoena practice. The relevant sections for purposes of our analysis are subdivisions (a), (b), (c), (f) and (g).
 
 
 26
 Subdivision (a) provides: "A subpoena shall be issued by the clerk under the seal of the court.... The clerk shall issue a subpoena, signed, sealed but otherwise in blank to a party requesting it, who shall fill in the blanks when it is served." Subdivision (c) empowers a court to quash or modify a subpoena duces tecum if compliance would be unreasonable or oppressive. Subdivision (g) allows the court to hold in contempt any individual who "without adequate excuse" fails to obey a served subpoena. Subdivision (b) states that if a defendant makes a showing of financial distress and need for a specific witness, "[t]he court shall order at any time, that without cost to the defendant, a subpoena be issued for service on [the] named witness." Subdivision (f) requires the entry of a court order before the clerk of court can issue a subpoena directing the attendance of a witness at a deposition.
 
 
 27
 Other than subdivisions (a), (b), (c), (f) and (g), Rule 17 makes no allowance for judicial intervention in subpoena practice. Moreover, neither Rule 17 nor any other provision in the federal rules or statutes allows for judicial intervention before a subpoena is served. Instead, subdivision (c) provides that a party may move to quash a subpoena on the grounds that compliance would be unreasonable or oppressive only after it has been served. Here, Rule 3.10 is inconsistent with Fed.R.Crim.P. 17 because it impermissibly extends the ministerial role granted the district courts in subpoena practice.
 
 
 28
 The board argues, however, that Rule 3.10 does not conflict with Fed.R.Crim.P. 17 because Fed.R.Crim.P. 17 only deals with the issuance of subpoenas whereas Rule 3.10 is concerned with the service of subpoenas. In effect, the board argues that the federal rules have left a void in the practice of subpoenas which the district court can fill by the adoption of a local rule such as Rule 3.10. Of course, the problem with this argument is that we are not concerned only with a literal conflict between Rule 3.10 and Fed.R.Crim.P. 17. Both 28 U.S.C. § 2071(a) and Fed.R.Crim.P. 57, which authorize the district court to prescribe local rules, require that the local rules not be inconsistent with the federal rules. In the present case, there may not be a literal conflict between Rule 3.10 and Fed.R.Crim.P. 17. The fact remains, however, that Rule 3.10 is inconsistent with Fed.R.Crim.P. 17 because nothing in Rule 17 grants to the district court what Rule 3.10 purports to do by means of a local rule: the power to screen grand jury subpoenas prior to service.
 
 B
 
 29
 Further, even if Rule 3.10 were made to be consistent with the federal rules, its adoption would still lie outside the local rule-making authority of the district court because Rule 3.10 seeks to regulate by means of local rules an area of criminal practice and procedure which goes beyond the "matters of detail" contemplated by Fed.R.Crim.P. 57.
 
 
 30
 As we have previously stated, the Advisory Committee's comments to Fed.R.Crim.P. 57 make clear the narrow scope and purpose of the local rule-making authority of the district court. Specifically, the comments provide that the rules of practice and procedure prescribed by the Supreme Court are intended to be a "comprehensive procedural code for criminal cases in Federal courts," and that the district courts are free to fill in with local rules only those "matters of detail" left open by the rules. As examples of "matters of detail" which would fall within the local rule-making authority of the district court, the Advisory Committee stated: "the mode of impanelling a jury, the manner and order of interposing challenges to jurors, the manner of selecting the foreman of a trial jury, the matter of sealed verdicts, the order of counsel's arguments to the jury and other similar details."
 
 
 31
 These examples of "matters of detail" are concerned with areas of court administration which the "comprehensive" procedural code promulgated by the Supreme Court left open to the federal district and circuit courts. For example, in this circuit, we have repeatedly stated that "local rules play a vital role in the district courts' efforts to manage themselves and their dockets." Anchorage Assoc. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 174 (3d Cir.1990); Smith v. Oelenschlager, 845 F.2d 1182, 1184 (3d Cir.1988).
 
 
 32
 Here, we believe that Rule 3.10 does more than merely fill in a matter of detail left open by the federal rules and is concerned with more than just the regulation of court or docket management. Instead, Rule 3.10 seeks to establish a broad mechanism for pre-service judicial review of attorney subpoenas, with attendant rules of procedure and rules of evidence.
 
 
 33
 The Board argues that the mechanism of judicial review Rule 3.10 seeks to establish can be adopted by the district court as a local rule because it will not interfere with federal grand jury practice. That may or may not be so. But the fatal flaw of Rule 3.10 is not whether it will disrupt federal grand jury practice. The fatal flaw of Rule 3.10 is that pre-service judicial approval of grand jury subpoenas is more than merely a "matter of detail" which the district court may properly prescribe as a local rule under Fed.R.Crim.P. 57.
 
 C
 
 34
 The Board maintains that the district court may properly adopt Rule 3.10 as a function of its supervisory powers over the grand jury. We disagree because, with one notable exception in United States v. Klubock, 832 F.2d 649 (1st Cir.1986), vacated, op. withdrawn, on reh., en banc, 832 F.2d 664 (1st Cir.1987), there is no case precedent for the district court assuming the role of approving grand jury subpoenas prior to service as would be required by Rule 3.10. Instead, the Supreme Court has been very reluctant to place restraints on the power of the grand jury to issue and serve subpoenas.
 
 
 35
 In United States v. Nixon, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), the Supreme Court held that a trial subpoena duces tecum issued under Fed.R.Crim.P. 17(c) is not "unreasonable or oppressive" if the party seeking to enforce the subpoena establishes that the documents sought are "evidentiary" and "relevant", that they are "not otherwise procurable reasonably in advance of trial by the exercise of due diligence," that the party "cannot properly prepare for trial without prior production of documents" and that the "application is made in good faith and is not intended as a general fishing expedition." Nixon, 418 U.S. at 699-700, 94 S.Ct. at 3103.
 
 
 36
 However, the Supreme Court has explicitly held that the Nixon requirements do not apply to grand jury subpoenas. In United States v. R. Enterprises, Inc., --- U.S. ----, 111 S.Ct. 722, 112 L.Ed.2d 795 (1991), a grand jury issued subpoenas duces tecum to several companies allegedly engaged in the interstate transportation of obscene materials. The district court denied the companies' motion to quash and, when the companies refused to comply with the subpoenas, found each of them in contempt. The Court of Appeals for the Fourth Circuit quashed the subpoenas on the grounds that they did not satisfy the "relevancy prong" of Nixon. The Supreme Court reversed holding that the Nixon requirements simply did not apply to grand jury subpoenas. R. Enterprises, --- U.S. at ---- - ----, 111 S.Ct. at 726-27.
 
 
 37
 The Supreme Court reasoned that many of the rules and restraints that apply to a trial do not apply in grand jury proceedings. Id. --- U.S. at ----, 111 S.Ct. at 726. The Court also wrote that the Nixon requirements would invite procedural delays and detours while courts evaluate the relevancy and admissibility of documents sought by a subpoena. Id. --- U.S. at ----, 111 S.Ct. at 727. Here, Rule 3.10 requires a court to use the same standards in approving the service of a grand jury subpoena on an attorney as the Supreme Court held to be inapplicable to grand jury proceedings in R. Enterprises.[2]
 
 
 38
 More recently, in United States v. Williams, --- U.S. ----, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992), the Supreme Court considered the question of whether a district court was correct in dismissing an otherwise valid grand jury indictment because the government had failed to disclose to the grand jury substantial exculpatory evidence in its possession. In Williams, respondent was indicted by a grand jury on several counts of knowingly misrepresenting his assets to a financial institution in violation of 18 U.S.C. § 1014 (1988). The district court dismissed the indictment because, according to its own precedent, the government had failed to disclose substantial exculpatory evidence to the grand jury. The Court of Appeals for the Tenth Circuit affirmed the district court's decision.
 
 
 39
 The Supreme Court reversed. The court held that the district court's supervisory power over the grand jury did not extend so far as to permit it to impose upon the prosecutor a legal obligation to present exculpatory evidence to the grand jury. Williams, --- U.S. at ----, 112 S.Ct. at 1746. The court reasoned that:
 
 
 40
 ... any power federal courts may have to fashion, on their own initiative, rules of grand jury procedure is a very limited one, not remotely comparable to the power they maintain over their own proceedings. It certainly would not permit judicial reshaping of the grand jury institution, substantially altering the traditional relationships between the prosecutor, the constitutional court and the grand jury itself. (Citations omitted).
 
 
 41
 Id. --- U.S. at ----, 112 S.Ct. at 1744.
 
 
 42
 R. Enterprises, Williams, and other cases in which the supreme court has been reluctant to impose substantive restraints on the grand jury,[3] suggest to us that the district court may not under the guise of its supervisory power or its local rule-making power, impose the sort of substantive restraint on the grand jury that is contemplated by Rule 3.10.
 
 
 43
 The only court which has considered and upheld a rule of conduct similar to Rule 3.10 is the Court of Appeals for the First Circuit. In United States v. Klubock, 832 F.2d 649 (1st Cir.1986), vacated, op. withdrawn, on reh., en banc, 832 F.2d 664 (1st Cir.1987), the Supreme Judicial Court of Massachusetts had adopted the following rule of professional conduct known as Prosecutorial Function 15 (PF 15):
 
 
 44
 It is unprofessional conduct for a prosecutor to subpoena an attorney to a grand jury without prior judicial approval in circumstances where the prosecutor seeks to compel the attorney/witness to provide evidence concerning a person who is represented by the attorney/witness.
 
 
 45
 A panel of the Court of Appeals for the First Circuit, in a 2-1 decision, upheld the rule holding that PF 15 was well within the rule-making power of the district court to regulate the conduct of attorneys who practice before them. Klubock, 832 F.2d at 653. However, the court gave no consideration to the fact that, while PF 15 was labeled a rule of conduct, it was in fact a procedural rule which set up a mechanism of judicial review in such a way as no other rule of conduct ever has.
 
 
 46
 Chief Judge Campbell, dissenting, reasoned that whether or not PF 15 was labeled a rule of conduct, the limitation placed by the rule upon the grand jury's subpoena power was far too "controversial and delicate to be the sort of matter of detail that fits within a district court's local rule making power." Id. at 659, 660. Judge Campbell continued: "If a rule like PF 15 is required, Congress or, at least, the Supreme Court under its rulemaking authority, acting at the national level, should promulgate it. A district court may not affect such a fundamental change through local rules." Id. at 663-664. On reconsideration, the court of appeals, sitting en banc, failed to produce a majority opinion. Instead the decision of the panel was affirmed by an equally divided court in a 3-3 decision.
 
 
 47
 After a careful examination of the various opinions in in Klubock we find the dissenting opinion of Chief Judge Campbell to be convincing. Much like PF 15, Rule 3.10 is not "the sort of detail that fits within the court's local rule-making powers." See Klubock, 832 F.2d at 660.
 
 IV
 
 48
 Having held that the adoption of Rule 3.10 falls outside the local rule-making authority of the federal district courts, we now turn to the Board's contention that Rule 3.10 may still be enforced against federal prosecutors in Pennsylvania as a state rule of Professional conduct. The district court reasoned that as a state rule of Professional conduct Rule 3.10 violates the Supremacy Clause of the United States Constitution because enforcement of Rule 3.10 "would frustrate the expeditious and just administration of the federal criminal laws." Baylson, 764 F.Supp. at 348.
 
 
 49
 In this appeal the Board responds that Rule 3.10 does not violate the Supremacy Clause because it is purely a rule of professional conduct, and states have primary responsibility in regulating the conduct of attorneys. Baylson in turn argues that Rule 3.10 does violate the Supremacy Clause because it is really a rule of procedure masquerading as a rule of conduct, and states have no business establishing rules of procedure for federal courts.
 
 
 50
 Both parties seem to place a great deal of importance on the name assigned to Rule 3.10. The Board calls it a rule of professional conduct. Baylson calls it a rule of procedure. But as Shakespeare asked:
 
 
 51
 What's in a name? That which we call a rose By any other name would smell as sweet.
 
 
 52
 For purposes of determining whether Rule 3.10 violates the Supremacy clause, it matters not at all what the Board or Baylson choose to call it. What matters is whether the substance of Rule 3.10 actually conflicts or is incompatible with federal law. Fidelity Federal Sav. & Loan Ass'n v. De La Cuesta, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982); Sperry v. Florida, 373 U.S. 379, 384, 83 S.Ct. 1322, 1325, 10 L.Ed.2d 428 (1963).
 
 
 53
 Under the Supremacy Clause, U.S. Const. Art. VI, cl. 2, when state law conflicts or is incompatible with federal law, the state law is pre-empted by federal law. Pre-emption occurs when Congress explicitly or implicitly states its intent to regulate a specific area at the exclusion of the states. Fidelity Federal, 458 U.S. at 152-153, 102 S.Ct. at 3022. Pre-emption also occurs when the state regulation actually conflicts or is incompatible with federal law. Fidelity Federal, 458 U.S. at 153, 102 S.Ct. at 3022; Sperry, 373 U.S. at 384, 83 S.Ct. at 1325. Finally, the Supreme Court has made clear that these principles apply even when the area being regulated by federal law is one of special concern to the state. Fidelity Federal, 458 U.S. at 153, 102 S.Ct. at 3022; Ridgway v. Ridgway, 454 U.S. 46, 54-55, 102 S.Ct. 49, 54, 70 L.Ed.2d 39 (1981); Sperry, 373 U.S. at 384, 83 S.Ct. at 1325; Free v. Bland, 369 U.S. 663, 666, 82 S.Ct. 1089, 1092, 8 L.Ed.2d 180 (1962).
 
 
 54
 For example, in Sperry, the Florida Bar sued defendant, a nonlawyer, to prevent him from representing clients before the Patent Office. The Florida bar argued that such representation violated Florida Law because it constituted unauthorized practice of law by a nonlawyer. Defendant argued that he was authorized to represent clients before the patent office pursuant to federal regulations which permitted nonlawyers to advise and assist clients in the presentation and prosecution of their applications before the patent office. In support of its position, the Florida Bar argued in part that Florida could prevent defendant from practicing before the Patent Office because of Florida's substantial interest in regulating the practice of law in that state. The Supreme Court disagreed and held that Florida could not prevent a nonlawyer from practicing before the Patent Office, notwithstanding that such activity constituted practice of law in Florida. Sperry, 373 U.S. at 385, 83 S.Ct. at 1325. The court reasoned that Florida could not "impose upon the performance of activity sanctioned by federal license additional conditions not contemplated by Congress." Id.
 
 
 55
 Similarly, here, Pennsylvania does have an important interest in regulating the conduct of attorneys licensed to practice in the state. But " 'the law of the state, though enacted in the exercise of powers not controverted, must yield' when incompatible with federal legislation." Sperry, 373 U.S. at 384, 83 S.Ct. at 1325, quoting Gibbons v. Ogden, 9 Wheat. 1, 211, 6 L.Ed. 23 (1824). Rule 3.10, as written, is simply incompatible with federal grand jury law for two reasons.
 
 
 56
 First, as we have previously stated in examining the validity of the district court's adoption of Rule 3.10 as a local federal rule, Rule 3.10 is inconsistent with Rule 17 of the Federal Rules of Criminal Procedure. If Rule 3.10 as a local federal rule is inconsistent with Fed.R.Crim.P. 17, it does not suddenly become consistent with Fed.R.Crim.P. 17 as a state rule of professional conduct. In other words, Rule 3.10 violates the Supremacy clause because it is incompatible with Fed.Crim.R.P. 17.
 
 
 57
 Second, Rule 3.10 purports to impose upon federal grand jury practice a requirement of pre-service judicial review of grand jury subpoenas. Such a requirement, as we have discussed above, is neither contemplated by the Federal Rules nor sanctioned by case precedent. In other words, Rule 3.10 violates the Supremacy Clause because, as the Supreme Court held in Sperry, it "imposes upon the performance" of federal grand jury activity "conditions not contemplated by Congress." Sperry, 373 U.S. at 385, 83 S.Ct. at 1326.
 
 V
 
 58
 This court is not unmindful of the serious problems associated with the practice of government prosecutors subpoenaing attorneys to testify about past or present clients before grand juries.[4] As the Ninth Circuit has expressed:
 
 
 59
 Many feel, and with some justification, that whatever benefit the government derives from this practice comes at the direct expense of the attorney-client relationship. Among the perceived costs, for example, are the potential loss of a client's choice of counsel should the latter be compelled to testify at the trial and the potential chilling effect upon the client's trust in his counsel's loyalty.
 
 
 60
 United States v. Perry, 857 F.2d 1346, 1347 (9th Cir.1988).
 
 
 61
 Moreover, this court is not convinced that the historic powers and functions of the grand jury alone would prevent the adoption of a federal rule requiring government prosecutors to obtain judicial approval before serving a grand jury subpoena on an attorney. While the grand jury has always played a unique role in our system of criminal justice, so too, we believe, has the attorney-client relationship. Justice Jackson said it best: "The lawyer and the law office are an indispensable part of our administration of justice." Hickman v. Taylor, 329 U.S. 495, 515, 67 S.Ct. 385, 395, 91 L.Ed. 451 (1947) (Jackson, J., concurring).
 
 
 62
 But whatever balance which needs to be stricken between the grand jury and the attorney-client relationship, it cannot be achieved by means of the limited power of the federal district and circuit courts to prescribe local rules. We therefore hold that Rule 3.10 may not be enforced against federal prosecutors practicing before the federal district courts for the Eastern, Middle and Western district courts of Pennsylvania because its adoption as federal law falls outside the local rule-making authority of the district court, and because its enforcement as state law violates the Supremacy Clause of the United States Constitution.
 
 
 63
 We will affirm the decision of the district court.
 
 
 
 [1]
 This approach is consistent with the Supreme Court's emphasis that court rules are adopted under a limited congressional grant of legislative power. See, e.g., Sibbach v. Wilson & Co., 312 U.S. 1, 9-10, 61 S.Ct. 422, 424-25, 85 L.Ed. 479 (1941). As stated by one commentator: "the federal courts have recognized that rule-making authority is ultimately a legislative power residing in Congress, although delegated in large measure to the courts." J. Weinstein, Reform Of Federal Court Rulemaking Procedures, 76 Colum.L.Rev. 905, 927-31 (1976)
 
 
 [2]
 In addition, the Second Circuit in In Re Grand Jury Subpoena Served upon Doe, 781 F.2d 238, 248 (2d Cir.1986) (en banc) stated in the context of attorney subpoenas:
 "To impose additional requirements that the government show its need for the information sought and that the attorney is the only source for that information would hamper severely the investigative function of the grand jury."
 The Seventh Circuit has similarly rejected a requirement that the government show "need" before subpoenaing an attorney. See In re Klein, 776 F.2d 628, 632 (7th Cir.1985). See also In Re Grand Jury Matter, 926 F.2d 348, 350 (4th Cir.1991); In re Grand Jury Subpoena for Attorney Representing Criminal Defendant Reyes-Requena, 913 F.2d 1118, 1127, 1129 (5th Cir.1990); In re Grand Jury Subpoenas, 906 F.2d 1485, 1495-96 (10th Cir.1990); United States v. Perry, 857 F.2d 1346, 1347-49 (9th Cir.1988).
 
 
 [3]
 See United States v. Calandra, 414 U.S. 338, 349, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974) (The exclusionary rule does not apply to grand jury proceedings. An indictment obtained through the use of evidence previously obtained in violation of the privilege against self-incrimination is "nevertheless valid."); United States v. Dionisio, 410 U.S. 1, 17-18, 93 S.Ct. 764, 773, 35 L.Ed.2d 67 (1973) (The grand jury should remain "free to pursue its investigations unhindered by external influences or supervision so long as it does not trench upon the legitimate rights of any witness called before it."); Costello v. United States, 350 U.S. 359, 364, 76 S.Ct. 406, 409, 100 L.Ed. 397 (1956) (The hearsay rule is not enforceable to grand jury proceedings. Its enforcement "would run counter to the whole history of the grand jury institution.")
 
 
 [4]
 See Stern & Hoffman, Privileged Informers: The Attorney Subpoena problem and a Proposal for Reform, 136 U.Pa.L.Rev. 1783, 1828 (19..); Zwerling, Federal Grand Juries v. Attorney Independence and Attorney-Client Privilege, 27 Hastings L.J. 1263, 1268 (1976); Campbell, Eliminate the Grand Jury, 64 J.Crim.L. & Criminology 174 (1973)