72 F.3d 138
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Roger W. PIPKIN, III, Plaintiff-Appellant,
v.
MORTGAGE CREDITCORP, INC.; Westmark Mortgage Corporation, Defendants,
and
MIDLAND MORTGAGE CO.; Midfirst Bank S.S.B.; Northwest
Bank, Defendants-Appellees,
v.
GOVERNMENT NATIONAL MORTGAGE ASSOCIATION, Third-Party
Defendant-Appellee.
 No. 94-6443.
(D.C.No. CIV-94-901-W)
 United States Court of Appeals, Tenth Circuit.
 Dec. 18, 1995.
 
 Before MOORE, BRORBY, and EBEL, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 This appeal presents the question whether a default judgment creditor may divest the interest of Government National Mortgage Association (GNMA) in certain Texas real estate mortgages solely because GNMA failed to record its interest in the mortgages in adherence to state law. Plaintiff Roger W. Pipkin, III appeals the district court's grant of summary judgment in favor of GNMA and its mortgage servicers, Midland Mortgage Co., MidFirst Bank, S.S.B., and Northwest Bank (the Midland Group). The district court held Texas law was superceded by GNMA's enabling statute and Mr. Pipkin was not entitled to execute upon the Texas mortgages because GNMA owned the mortgages as a matter of law. We agree and affirm.
 
 
 2
 Mr. Pipkin is the judgment creditor of defendants Mortgage Creditcorp, Inc. and Westmark Mortgage Corporation (the Westmark Parties), two defunct mortgage servicing companies. In 1994, Mr. Pipkin obtained a $4.8 million default judgment against the Westmark Parties in a Texas state court. That court then entered a post-judgment order instructing the Midland Group, the defendants-in-intervention and third-party plaintiffs, to turn over to Mr. Pipkin several Texas real estate mortgages which the court deemed "nonexempt assets of the [Westmark Parties]."
 
 
 3
 To execute his judgment on the Oklahoma-based Midland Group, Mr. Pipkin filed the post-judgment order in Oklahoma City, Oklahoma. Subsequently, the Midland Group obtained a stay of execution from the state district court of Oklahoma County, and filed a petition in intervention naming GNMA as third-party defendant. GNMA removed the case to the United States District Court for the Western District of Oklahoma.
 
 
 4
 There, GNMA and the Midland Group moved for summary judgment, arguing the mortgages sought by Mr. Pipkin were owned by GNMA, not the Westmark Parties. Mr. Pipkin countered that, under Texas law, the Westmark Parties continued to own the mortgages because GNMA failed to record its interest in the mortgages. The district court granted GNMA's and the Midland Group's motions on the ground that GNMA's enabling statute, 12 U.S.C. 1721(g), expressly preempts any Texas law limiting GNMA's ownership rights in the mortgages.
 
 I.
 
 5
 GNMA is a creature of statute. Under GNMA's enabling statute, Section 1721(g), Congress vested GNMA with broad powers to carry out the congressional objective of establishing and encouraging a secondary market for home mortgages. Section 1721(g) provides:
 
 
 6
 The Association [GNMA] is hereby empowered, in connection with any guaranty under this subsection, whether before or after any default, to provide by contract with the issuer for the extinguishment, upon default by the issuer, of any redemption, equitable, legal, or other right, title, or interest of the issuer in any mortgage or mortgages constituting the trust or pool against which the guaranteed securities are issued; and with respect to any issue of guaranteed securities, in the event of default and pursuant otherwise to the terms of the contract, the mortgages that constitute such trust or pool shall become the absolute property of the Association subject only to the unsatisfied rights of the holders of the securities based on and backed by such trust or pool. No State or local law, ... shall preclude or limit the exercise by the Association of (A) its power to contract with the issuer on the terms stated in the preceding sentence, (B) its rights to enforce any such contract with the issuer, or (C) its ownership rights, as provided in the preceding sentence, in the mortgages constituting the trust or pool....
 
 
 7
 12 U.S.C. 1721(g)(1) (emphasis added).
 
 
 8
 GNMA is a government corporation within the United States Department of Housing and Urban Development. It operates a mortgage-backed securities program (MBS Program) to attract investors into the private mortgage market. Under the MBS Program, GNMA authorizes certain private entities (Issuers) to assemble pools of qualified mortgages and to issue securities based on and backed by these pools of federally insured or guaranteed mortgages. The mortgage-backed securities entitle investors to timely payment of principal and interest.
 
 
 9
 Issuers are responsible for ensuring timely principal and interest payments are made to investors. However, to make these securities more attractive to investors, GNMA guarantees payment if the Issuers default. This guarantee is backed by the full faith and credit of the United States. Therefore, the United States is liable to the holders of the mortgage-backed securities if the Issuers fail to make payment when due.
 
 
 10
 The pool of private mortgages provides the source of funds and the primary security for the principal and interest payments. Thus, to protect its interests, GNMA requires Issuers to enter into a contractual agreement with GNMA to convey to GNMA the title of the Issuers to the mortgages. Issuers retain nominal interest in the mortgages to enable them to carry out servicing functions in connection with the mortgages.
 
 
 11
 All GNMA contracts also empower GNMA to declare the Issuers in default under the MBS Program in certain instances. Upon GNMA's declaration of default, by letter directed to the Issuers, GNMA may divest the Issuers of any interest in the pooled mortgages. Upon the exercise of the divestiture, the pooled mortgages become the absolute property of GNMA, subject only to unsatisfied rights of the holders of the securities backed by the pooled mortgages.
 
 
 12
 The Westmark Parties were Issuers in GNMA's MBS Program until October 1989 when GNMA declared them in default. At that time, GNMA assumed ownership of the mortgages and took over the obligation to make the principal and interest payments previously made by the Westmark Parties. However, as the parties here agree, GNMA did not take steps to record its interest in the Texas mortgages.
 
 II.
 
 13
 With these facts at hand, we first turn to whether the district court properly granted GNMA's motion for summary judgment holding the Texas recording statute preempted by GNMA's enabling law. We review a district court's grant of summary judgment de novo. Committee for the First Amendment v. Campbell, 962 F.2d 1517, 1521 (10th Cir.1992). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).
 
 
 14
 Mr. Pipkin contends by virtue of the Texas recording statute and GNMA's failure to record its interest in the pooled mortgages, the Westmark Parties own those mortgages under Texas law. As a judgment creditor of the Westmark Parties, Mr. Pipkin argues he is entitled to execute on those mortgages.
 
 
 15
 Mr. Pipkin asserts 1721(g) does not preempt Texas Property Code Section 13.001(a), which he claims requires GNMA to record its interest in the mortgages.[2] Moreover, Mr. Pipkin argues, the Texas recording statute does not limit GNMA's rights under 1721(g). In his view, the Texas law protects the rights of third parties by requiring GNMA to record its ownership rights. Therefore, he argues, because GNMA failed to record any assignment of the Westmark Parties' mortgages, GNMA cannot claim rights superior to those the Texas law protects.
 
 
 16
 We are not persuaded by Mr. Pipkin's argument. Instead, we agree with the district court that 1721(g) expressly preempts Texas Property Code Section 13.001(a) to the extent Texas law would require GNMA to record its interest in the Texas mortgages to avoid Mr. Pipkin's rights as a judgment creditor.[3]
 
 
 17
 The Supremacy Clause of Article VI of the Constitution provides Congress with the power to preempt state law. "Preemption occurs when Congress expresses a clear intent to preempt in a federal statute; ... or when state law is an obstacle to the objectives and purpose of Congress." Kansas ex rel Todd v. United States, 995 F.2d 1505, 1509-10 (10th Cir.1993) (citing Louisiana Public Serv. Comm. v. FCC, 476 U.S. 355, 368-69 (1986)).
 
 
 18
 By explicitly stating in 1721(g): "[n]o State or local law ... shall preclude or limit the exercise [by GNMA] of ... its right to enforce [its] contracts ... or ... its ownership rights," 12 U.S.C. 1721(g)(1), Congress has emphatically expressed its intent to preempt any state law which would limit GNMA's rights to the mortgage pools in the event of an Issuer's default. Even requiring GNMA to record its interest in the mortgages would conflict with the power and rights granted to GNMA under its federal enabling statute.
 
 
 19
 Not only would imposition of the Texas recording statute inhibit GNMA's power to invest itself with title to the pooled mortgages, but it would also frustrate the purposes behind passage of 1721(g). To compensate for the government's potential liability under the MBS Program, Congress sought to ensure GNMA had access to the pool of mortgages which provide the primary source of funds for the principal and interest payments. Accordingly, Congress vested GNMA with broad authority to divest defaulted Issuers' interests in the pooled mortgages.
 
 
 20
 Furthermore, imposition of the state law frustrates the congressional mandate that GNMA conduct its operations with "minimum loss to the Federal Government." 12 U.S.C. 1716(c).[4] If the Texas recording statute could divest GNMA of the mortgages, the outstanding securities guaranteed by GNMA would no longer be "based on and backed by" the mortgages. Thus, the government would be forced to pay the investors out of general Treasury funds.
 
 
 21
 Mr. Pipkin argues GNMA can protect its interests by recording the mortgages just as any other purchaser. However, even if GNMA could protect itself by recording its interest, state law is preempted when it imposes governmental burdens exceeding the requirements of federal law. See Baylson v. Disciplinary Bd. of the Supreme Court of Pa., 975 F.2d 102, 111-12 (3d Cir.1992), cert. denied, 113 S.Ct. 1578 (1993) (state rule of professional conduct requiring federal prosecutors to obtain judicial approval before subpoenaing any attorney was preempted because it imposed additional conditions not contemplated by Congress).
 
 
 22
 Although Mr. Pipkin asserts otherwise, the preemption of Section 13.001(a) harms no property interests here. Section 1721(g) does not create new mortgages, or "phantom mortgages" as Mr. Pipkin argues. The mortgages Mr. Pipkin seeks to execute upon already exist. The only question is whether GNMA or the Westmark Parties (and now Mr. Pipkin) owns the mortgages. Section 1721(g) merely resolves that question in favor of GNMA.
 
 III.
 
 23
 Mr. Pipkin next contends the district court erred in granting summary judgment to GNMA and the Midland Group because GNMA failed to provide evidence of its ownership of the mortgages or to present evidence that the Westmark Parties were Issuers under the MBS Program. We disagree.
 
 
 24
 In passing upon this issue, we must review the record and consider the evidence in the light most favorable to the non-moving party. Dreiling v. Peugeot Motors of Am., Inc., 850 F.2d 1373, 1377 (10th Cir.1988). The record and the briefs amply demonstrate both the Westmark Parties' participation in the MBS Program and GNMA's ownership of the Texas mortgages.
 
 
 25
 George Anderson, a GNMA official, stated in his declaration "the Westmark Parties entered into GNMA Contracts ... [and] were issuers under the GNMA MBS program until GNMA declared them in default...." Lynn Coleman, Vice President of Northwest Bank, and Ken R. Clark, Senior Vice President of MidFirst Bank, S.S.B., and Senior Vice President of Midland Mortgage Co., stated in their affidavits that Northwest Bank, MidFirst Bank, S.S.B., and Midland Mortgage Co. had no mortgages or other loan documents referring to the Westmark Parties other than loan documents of GNMA pooled mortgages.[5] We think this uncontroverted evidence is sufficient to show both the Issuer status of the Westmark Parties and GNMA's ownership of the mortgages.
 
 IV.
 
 26
 Mr. Pipkin also contends the district court erred in granting summary judgment for GNMA and the Midland Group without honoring Mr. Pipkin's Rule 56(f) request.[6] We review a district court's denial of a Rule 56(f) motion for an abuse of discretion. Jensen v. Redevelopment Agency of Sandy City, 998 F.2d 1550, 1553 (10th Cir.1993). "Under the abuse of discretion standard, a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." United States v. Ortiz, 804 F.2d 1161, 1164, n. 2 (10th Cir.1986). Here, there is no evidence the district court abused its discretion.
 
 
 27
 To invoke the protection of Rule 56(f), we have held "the party filing the affidavit must state with specificity how the desired time would enable [the non-moving party] to meet its burden in opposing summary judgment.' " Jensen, 998 F.2d at 1554 (alteration in original) (quoting Pasternak v. Lear Petroleum Exploration, Inc., 790 F.2d 828, 833 (10th Cir.1986)). Rule 56(f) "may not be invoked by the mere assertion that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable...." Pasternak, 790 F.2d at 833. Furthermore, "a mere assertion that the evidence supporting a [party's] allegation is in the hands of the [opposing party] is insufficient to justify a denial of a motion for summary judgment under Rule 56(f).' " Weir v. Anaconda Co., 773 F.2d 1073, 1083 (10th Cir.1985) (quoting Patty Precision v. Brown & Sharpe Mfg. Co., 742 F.2d 1260, 1264 (10th Cir.1984) (brackets added by Patty Precision ) (quoting Contemporary Mission, Inc. v. United States Postal Serv., 648 F.2d 97, 107 (2d Cir.1981)).
 
 
 28
 The affidavit supporting Mr. Pipkin's Rule 56(f) request was extremely brief. In it, Mr. Pipkin's attorney stated she had twice requested GNMA to produce records or other competent evidence to support its claim of ownership of the Westmark Parties' mortgages. Mr. Pipkin's attorney then stated, "I cannot properly prosecute Mr. Pipkin's claim without the requested discovery or additional discovery as may become necessary during the pendency of this matter." This affidavit is insufficient to meet the requirements of Rule 56(f).
 
 
 29
 We have also held parties must not be "dilatory" in making Rule 56(f) requests. Jensen, 998 F.2d at 1554. Here, the district court found Mr. Pipkin had "ample" time to engage in discovery and neglected to use this time wisely. The record reveals Mr. Pipkin failed to file any formal discovery requests during the four-month time period prior to GNMA's motion for summary judgment. Accordingly, we cannot say the district court abused its discretion in denying Mr. Pipkin's Rule 56(f) request.
 
 
 30
 AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Section 13.001(a) provides:
 A conveyance of real property or an interest in real property or a mortgage or deed of trust is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice unless the instrument has been acknowledged, sworn to, or proved and filed for record as required by law.
 Tex. Prop.Code Ann. 13.001(a) (West 1993).
 
 
 [3]
 We need not decide here whether Section 13.001(a) actually requires mortgage assignees to record their interest. Instead, we merely hold to the extent Section 13.001(a) so requires, it is preempted by Section 1721(g)
 
 
 [4]
 12 U.S.C. 1716 states, in pertinent part:
 The Congress declares that the purposes of this subchapter are to establish secondary market facilities for home mortgages, to provide that the operations thereof shall be financed by private capital to the maximum extent feasible, and to authorize such facilities to ... (c) manage and liquidate federally owned mortgage portfolios in an orderly manner, with a minimum of adverse effect upon the home mortgage market and minimum loss to the Federal Government.
 
 
 [5]
 Mr. Pipkin argues these statements are inadmissible hearsay because they are based solely on knowledge gleaned from bank records. We disagree. Ms. Coleman's and Mr. Clark's respective positions and their personal knowledge of the banks' custodial duties in connection with GNMA's MBS Program meet the requirements of Fed.R.Civ.P. 56(e). See, e.g., Barthelemy v. Air Lines Pilots Ass'n, 897 F.2d 999, 1018 (9th Cir.1990) (corporate officers' personal knowledge and competence to testify were reasonably inferred from their positions and the nature of their participation in the contested matters)
 
 
 [6]
 Rule 56(f) provides:
 Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.